1   Daniel S. Mount (Cal. Bar No. 77517)
2   Jing H. Cherng (Cal. Bar No. 265017)
    Mount, Spelman & Fingerman, P.C.
3   RiverPark Tower, Suite 1650
    333 West San Carlos Street
4   San Jose CA  95110-2740
    Phone: (408) 279-7000
5   Fax:    (408) 998-1473
    Email:  dmount@mount.com; gcherng@mount.com
6
7   Larisa Migachyov (Cal. Bar No. 264669)
    Law Offices of Larisa Migachyov
8   Post Office Box 2061
    San Francisco, California 94126-2061
9   Tel.: 650.218.5480
    Email: larisa@lvmpatents.com
10
11  Counsel for SMARTDATA S.A.

12              U.S. District Court
         Northern District of California
13

SMARTDATA S.A.                    | Case No.  3:15-cv-01282-SI
14
            Plaintiff             | **Opposition to Motion to Dismiss**
15
v.                               | Date:     September 18, 2015
16                                 | Time:     9:00am
Amazon.com, Inc.                  | Place:    Courtroom 10
17
            Defendants
18

19
20
21
22
23
24
25
26
27
28

*Left margin vertical text:* MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1

## **Table of Contents**

2

I.   Introduction.................................................................................................................................1

II.  Background and Claims of the '757 Patent ............................................................................1

III. Argument .....................................................................................................................................3

    A.     The '757 patent is presumptively valid .............................................................................3

    B.     The '757 patent claims patent eligible subject matter .....................................................4

        1.       The '757 Patent is not directed at the abstract concept of modularity....................4

        2.       The claims of the '757 Patent claims statutory subject matter because it recites a computer comprising specific structural elements, not an abstraction without any concrete form .........................................................................................................5

        3.       The invention claimed in the '757 Patent contains an inventive step because it does not preempt the concept of modularity, it solves a specific problem arising in a technological realm, and it passes the machine or transformation test...................7

    C.     The '757 patent is not indefinite under 35 USC § 112 ¶ 2 for failing to disclose sufficient structure ...........................................................................................................................10

        1.       Amazon must prove invalidity under § 112 by clear and convincing evidence ....11

        2.       Claim construction is necessary in order to resolve this issue...............................11

        3.       Amazon fails to carry its burden of proof.............................................................12

        4.       The '757 patent adequately discloses structures corresponding to the functions..14

IV. Conclusion ................................................................................................................................18

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1

## Table of Authorities

2

3

Cases

Alice Corp v. CLS Bank Int'l, 573 U.S. ___ (2014) ....................................................................5

Autoform Engineering GmbH v. Engineering Technology Associates, Inc., 2:10-cv-14141-AJT-RSW
(E.D. Mich. Sept. 5, 2014) ........................................................................................................4

Bascom v. Facebook, 3:12-cv-06293-SI (N.D. Cal. Jan. 2, 2015) ................................................3

Bell Atlantic v. Twombly, 550 U.S. 544 (2007) .............................................................................3

Bilski v. Kappos, 561 U.S. 593 (2010) ........................................................................................10

Cousins v. Lockyer, 568 F. 3d 1063 (9th Cir. 2009) .....................................................................3

DDR Holdings, LLC v. Hotels. Com, LP, 773 F. 3d 1245 (Fed. Cir. 2014)..........................4, 5, 8

Elcommerce. com, Inc. v. SAP AG, 745 F. 3d 490 (Fed. Cir. 2014) ...............................11, 12, 13, 14

Helios Software v. Spectorsoft, No. 12-081-LPS (D. Del. Sep. 18, 2014) .....................................8

In re Dossel, 115 F.3d 942 (Fed. Cir.1997) .................................................................................14

Intel Corp. v. VIA Techs., Inc., 319 F.3d 1357 (Fed. Cir. 2003) .................................................14

Intergraph Hardware Technologies v. Toshiba Corp, 508 F. Supp.2d 752 (N.D. Cal. 2007) ........11, 12

Lighting Ballast v. Philips Electronics, No. 2012–1014 (Fed. Cir. June 23, 2015) ............................12

Mayo Collaborative v. Prometheus Labs., 132 S. Ct. 1289 (2012) ...........................................4, 7

Modern Telecom  Systems LLC v. Juno Online Services, Inc., No. SA CV 14-0347-DOC (C.D. Cal.
Mar. 17, 2015) ............................................................................................................................8

Noah Systems Inc. v. Intuit Inc., 675 F.3d 1302 (Fed. Cir. 2012) ..............................................14

Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298 (Fed. Cir. 1999)...............................5

SiRF Tech., Inc. v. Int'l Trade Comm'n, 601 F.3d 1319 (Fed. Cir. 2010).................................9, 10

The Chamberlain Group, Inc., v. Linear LLC, No. 14-cv-05197, *15 (N.D. Ill. July 7, 2015) .........5, 6

Triplay, Inc. v. WhatsApp, Inc., No. 13-1703-LPS, (D. Del. Apr. 28, 2015) ................................7

Typhoon Touch Inc. v. Dell Inc., 659 F.3d 1376 (Fed. Cir. 2011)..............................................14

Ultramercial, Inc. v. Hulu, LLC, 772 F. 3d 709 (Fed. Cir. 2014) ............................................4, 5

Williamson v. Citrix, ___ F.3d ___, No. 2013-1130 (Fed. Cir. June 16, 2015)......................10

Federal Statutes

35 U.S.C. § 101...................................................................................................................1, 3, 4

35 U.S.C. § 112 ¶ 6.............................................................................................................passim

35 U.S.C.§ 282....................................................................................................................3

35 USC § 112 ¶ 2..........................................................................................................1, 7, 9

F.R.C.P. 12(b)(6) ....................................................................................................................3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    <u>Introduction</u>

35 U.S.C. § 101 authorizes a patent upon any new and useful machine. The '757 patent does not claim a generic computer that embodies the abstract concept of modularity. Instead, the  invention claimed in the '757 patent is directed at a specific technical solution arising out of a technological field, does not preempt the abstract concept relied upon by Amazon here, and further passes the machine or transformation test. For these reasons, the invention claimed in the '757 patent is directed to statutory subject matter.

Similarly, the claims of the '757 patent do not run afoul of the rule against pure functional claiming. Functional limitations directed at the functions of the structure does not magically transform the specification's disclosed structures into black boxes. Moreover, the specification amply discloses structure sufficient to perform the functions identified in the claims, even assuming they were properly construed as means plus function limitations.

For these reasons, SmartData respectfully requests that the Court deny Amazon's motion to dismiss.

## II.   <u>Background and Claims of the '757 Patent</u>

The '757 patent is directed at a computer comprising a central unit, an input device, a communication interface with a remote network, and display and/or sound reproduction means.  In particular, the '757 patent involves pocket-sized device that allows communication between a data input device that also connects to a remote network, and a third device that is a display or sound reproduction means.

Three independent claims, claims 1, 16, and 17, respectively claim separate embodiments of the invention.

| Claim 1 | Claim 16 | Claim 17 |
|---|---|---|
| 1. A computer comprising a central unit, an input device, an interface for communication with a remote network and display and/or sound reproduction means, characterized in that it comprises the following three separate elements: | 16. A portable, pocket-sized microcomputer device comprising a central unit that contains means for storing and executing computer programs and means for storing data, and which does not include a data input device and which does not include a display means or a | 17. A computer comprising a central unit, an input device, an interface for communication with a remote network and display and/or sound reproduction means, characterized in that it comprises the following three separate elements: |

a) a portable pocket-sized first element comprising said central unit which contains means for storing and executing computer programs and means for storing data,

b) a second physically separate element comprising said data input device, said interface for communication with a remote network and means of wireless transmission with said first element,

c) a third physically separate element comprising said display means and/or said sound reproduction means and means of connection to said first element, and

wherein said first element furthermore comprises means of connection to said third element and means of receiving, respectively sending, signals sent, respectively received, by said second element,

wherein the first element can communicate with the remote network via the second element, and

wherein the computer can use a screen of a television as the display means, an acoustic cabinet or cabinets associated with the television as the sound reproduction means, a key pad or a touch screen of a mobile telephone as the interface, and a radio communication interface obtained through the mobile telephone that also operates as a gateway for accessing the remote network.

sound reproduction means,

wherein the central unit is capable of connecting with a physically separate element comprising a data input device that has an interface for communication with a remote network and a means of wireless transmission with the central unit,

wherein the central unit is capable of connecting with another physically separate element comprising a display means and/or a sound reproduction means and that has a means of connection to the central unit,

wherein the central unit comprises a means of receiving, respectively sending, signals sent, respectively received, by said physically separate element and a means of connection to said another physically separate element,

wherein the central unit can communicate with the remote network via the physically separate element, and wherein the device can use a screen of a television as the display means, an acoustic cabinet or cabinets associated with the television as the sound reproduction means, a key pad or a touch screen of a mobile telephone as the interface, and a radio communication interface obtained through the mobile telephone that also operates as a gateway for accessing the remote network.

a) a portable pocket-sized first element comprising said central unit which contains means for storing and executing computer programs and means for storing data,

b) a second element comprising said data input device, said interface for communication with a remote network and means of wireless transmission with said first element,

c) a third element comprising said display means and/or said sound reproduction means and means of connection to said first element,

wherein said first element furthermore comprises means of connection to said third element and means of receiving, respectively sending, signals sent, respectively received, by said second element,

wherein the second element is a pocket computer, pocket electronic diary, portable computer, office computer or serve,

wherein the first element can communicate with the remote network via the second element, and

wherein the computer can use a screen of a television as the display means, an acoustic cabinet or cabinets associated with the television as the sound reproduction means, a key pad or a touch screen of a mobile telephone as the interface, and a radio communication interface obtained through the mobile telephone that also operates as a gateway for accessing the remote network.

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1    Several dependent and multiple dependent claims depend upon Claim 1. Each of these

2    dependent or multiple dependent claims recites specific structures that further limit the scope of

3    Claim 1. For example, in claims 5 through 7, dependent upon claim 1, the limitations are respectively

4    that the third element is a television screen, that the means of connection of the first element consist

5    of a SCART plug, and the first element takes the form of an insert containing a SCART socket.

6    **III.** <u>**Argument**</u>

7    **A.    The '757 patent is presumptively valid**

8    A court ruling on a motion to dismiss under Rule 12(b)(6) must take all factual allegations in

9    the complaint as true, and must also draw all reasonable inferences in favor of the non-moving party.[1]

10   The moving party bears the burden of persuasion in any motion to dismiss. The motion must be

11   denied if the complaint states a plausible claim for relief.[2] Similarly, Patents are presumptively valid.[3]

12   This presumption of validity attaches to each claim in the patent independently of the validity of the

13   other claims.[4] This presumption of validity attaches even where an accused infringer attacks the

14   validity of the asserted patent under 35 U.S.C. § 101.[5]

15   As the moving party, Amazon bears the burden of proof on all issues related to invalidity.

16   Neither the Supreme Court nor the Federal Circuit have ruled on the issue of whether the clear and

17   convincing standard applies to challenges under 35 U.S.C. § 101. This Court in <u>Bascom</u> applied the

18   preponderance standard to the motion at issue in that case. Regardless of which evidentiary standard

19   to apply, Amazon has failed to carry its burden by *inter alia*, failing to discuss each of the claims in

20   the patents in suit on its own merits, failing to provide any support for its reductive characterizations

21   of the invention, failing to support its contention that the '757 patent is directed at "modularity", and

22   even ignoring the express teachings of the claims and specification when concluding that the '757

23   patent claims a "generic computer."

24   The Patent Act requires Amazon to prove the invalidity of each of the claims independently of

25   the validity of other claims, but Amazon fails to distinguish any of the claims in its motion. Instead, it

---

[1] <u>Cousins v. Lockyer</u>, 568 F. 3d 1063, 1068 (9th Cir. 2009)

[2] <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544 (2007)

[3] 35 U.S.C.§ 282.

[4] <u>Id</u>.

[5] <u>Bascom v. Facebook</u>, 3:12-cv-06293-SI (N.D. Cal. Jan. 2, 2015).

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1   attempts to shoehorn the entire invention within Claim 1, while failing to explain how Claim 16 and

2   Claim 17, the other two independent claims, are sufficiently similar to Claim 1 such that no further

3   analyses of those claims would be needed. For this reason alone Amazon's motion should be denied.

4   **B.     The '757 patent claims patent eligible subject matter**

5       The Supreme Court has cautioned that the overly aggressive interpretation of 35 U.S.C. § 101

6   urged by Amazon would "eviscerate patent law," because "all inventions at some level embody, use,

7   reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas."[6]

8       In deciding a motion under 35 U.S.C. § 101, the accused infringer must establish both that the

9   patent is directed at an abstract concept, and the claims of the patent do not contain an inventive

10  concept.[7]  The motion must be denied if either one of the requirements is not met. Claims that solve a

11  problem arising in a specific technological concept, or that contain elements narrowing their scope do

12  not violate § 101's prohibition against patenting abstract concepts.[8] Similarly, claims that to not

13  attempt to preempt every application of the idea, or claims that go beyond a generic computer

14  performing a generic idea, even if directed at abstract concepts, also do not violate § 101.[9]

15      **1.     The '757 Patent is not directed at the abstract concept of modularity.**

16      First prong of *Mayo* test is whether the invention is directed at a patent ineligible concept. As

17  a preliminary issue the "concept" to which Amazon tethers the '757 patent warrants scrutiny.

18  Amazon asserts that the '757 patent is directed at "modularity," or a "modular computer."  Amazon

19  makes no attempt to establish "modularity" as a concept abstract enough to warrant treatment as a

20  judicial exception to 35 U.S.C. § 101. Instead, it cites to the assembly line, Greek architecture,

21  Bauhaus, and IKEA as examples of the disassembly of a system into components. These concepts,

22  while eclectic, have no bearing on the invention claimed in the '757 Patent. No reasonable reading of

23  the '757 Patent could possibly cover a system for constructing buildings from components, or a

24  method of division of labor, or selling two cars with leather and cloth seats, respectively. Indeed,

Mount, Spelman & Fingerman, p.c.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

---

[6] Mayo Collaborative v. Prometheus Labs., 132 S. Ct. 1289, 1294 (2012)

[7] Ultramercial, Inc. v. Hulu, LLC, 772 F. 3d 709, 715 (Fed. Cir. 2014)

[8] DDR Holdings, LLC v. Hotels. Com, LP, 773 F. 3d 1245, 1257-1259 (Fed. Cir. 2014); Autoform Engineering GmbH v. Engineering Technology Associates, Inc., 2:10-cv-14141-AJT-RSW (E.D. Mich. Sept. 5, 2014)

[9] See DDR Holdings, 773 F.3d at 1259.

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1  outside of the title, not once is the word "modular" used in the claims or the specification of the '757

2  Patent.[10]

3        2.    The claims of the '757 Patent claims statutory subject matter because it recites

4              a computer comprising specific structural elements, not an abstraction without any

5              concrete form

6        "Distinguishing between claims that recite a patent-eligible invention and claims that add too

7  little to a patent-ineligible abstract concept can be difficult, as the line separating the two is not

8  always clear."[11] An idea is abstract if it has "no particular concrete or tangible form."[12] Claims that

9  recite physical and tangible components directed to more than the performance of an abstract idea are

10 patent-eligible.[13]

11       In Chamberlain, the asserted claims were directed at "to monitoring the status of a movable

12 barrier in such a way that a change in that status can set off an alarm or adjust the timing of an alarm

13 disarmament or actuation." These claims were found to be patent eligible because they improved the

14 operation of each of the basic components, the garage door opener and security system, by allowing

15 the garage door to access the security system, and vice versa. In this vein, the Chamberlain court

16 found that "The improvement of providing communication between these basic components—

17 individually, patent-eligible—also uses a computer with methods or systems that would otherwise be

18 patent eligible absent the computers."[14]

19       Here, like the claims in Chamberlain, the claims of the '757 patent recite to physical and

20 tangible components directed to more than the performance of an abstract idea. Claim 1 recites a

21 computer comprising a central unit, an input device, an interface for communication with a remote

22 network and display and/or sound reproduction means, and further comprising three physically

23 separate elements, each comprising at least one means plus function element, the structure of which is

24

25 [10] See Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1312 (Fed. Cir. 1999) (reversing
   trial court's claim construction that relied upon patent's title because patent title is irrelevant to claim
26 construction)

27 [11] DDR Holdings 773 F. 3d at 1255.

   [12] Ultramercial, 772 F.2d at 715.

28 [13] The Chamberlain Group, Inc., v. Linear LLC, No. 14-cv-05197, *15 (N.D. Ill. July 7, 2015)
   [14] Id., citing Alice Corp v. CLS Bank Int'l, 573 U.S. __, 134 S. Ct. 2347 at 2359-60 (2014)

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1   disclosed as discussed below. Similarly, Claim 16 is directed at a pocket-sized central unit that can

2   connect to physically separate elements as taught in the claim. Claim 17 teaches a separate

3   embodiment where the second element is a "pocket computer, pocket electronic diary, portable

4   computer, office computer or serve," and the first and third elements further comprise means-plus-

5   function limitations whose structures are disclosed in the specification.

6        Similarly, the claims of the '757 Patent improve the operation of each of the basic

7   components. Just as the invention in <u>Chamberlain</u>, here the invention claimed in the '757 patent also

8   improves the function of the individual components that could otherwise not be achieved. For

9   example, the television or display means can now connect to the remote network, such as the internet,

10  through the second element connected to the first element. For example, as disclosed in the

11  specification,[15]

12

13        the result obtained with the computer according to the invention can
          result in a higher-performance assembly than the computers of the state
14        of the art. Specifically, this microcomputer is for example capable of
          reproducing sound on the high-fidelity acoustic cabinets of a television
15        to which it is hooked up, or of offering a giant picture using a video
          projector.

16        Amazon argues that the invention claimed in the '757 patent is abstract because the claims

17  contain functional limitations.[16] According to Amazon, because Claim 1's last limitations appears to

18  be couched in functional language, that every single claim in the patent  as a whole must be directed

19  at an abstract concept. Nor is there any merit to Amazon's argument that the invention claimed in the

20  '757 patent is merely a computer implementation of the abstraction of modularity. However, as

21  Amazon points out, IKEA, Bauhaus, and the assembly line are all examples of modularity that could

22  not be conceivably covered by the claims of the '757 patent. Moreover, Amazon's very definition of

23  modularity belies its assertion of abstractness. The assembly and/or deconstruction of a tangible or

24  concrete system must in of itself also be tangible or concrete, and thus cannot be "abstract" under

25  <u>Ultramercial</u> because it has concrete or tangible form.

26

27  _____

    [15] Col. 1:63- Col. 2:2

28  [16] Mot. at 11:5-12 (arguing that claims containing functional language must necessarily be directed to
    abstract concept)

Amazon's reliance on <u>Triplay, Inc. v. WhatsApp, Inc.</u> is misplaced.[17] There, the court found that the claims at issue were directed to an abstract concept because the "majority of the claim language" spoke to the abstract idea of converting and forwarding messages, and could "be applied in just about any communications context, depending on the means of communication." Furthermore, the claim limitations that the court held to be directed to the abstract concept were clearly related to the abstract concept. For example, the <u>Triplay</u> court did not find the claims to be directed at the abstract concept of the quadratic formula because the claim limitations recited converting and forwarding messages, because the quadratic formula has nothing to do with converting and forwarding messages.

Here, the limitation Amazon asserts merely as merely embodying the concept of modularity has nothing to do with modularity. Contrary to Amazon's assertion, "wherein the computer can use a screen of a television as the display means, an acoustic cabinet or cabinets associated with the television as the sound reproduction means, a key pad or a touch screen of a mobile telephone as the interface, and a radio communication interface obtained through the mobile telephone that also operates as a gateway for accessing the remote network" has nothing to do with the concept of modularity – there is no deconstruction of components of generic computers. Instead, it is a recitation of specific hardware structures, each performing a function specific to the realm of computers.

> 3.   <u>The invention claimed in the '757 Patent contains an inventive step because it does not preempt the concept of modularity, it solves a specific problem arising in a technological realm, and it passes the machine or transformation test.</u>

To ensure patents are not granted when the subject matter to which the claims are directed completely preempts an idea, "[a] claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'"[18] Thus, courts have found patents to contain inventive steps when they do not preempt the abstract concept to which the claims are directed, or when the claimed invention solves a specific problem arising out of a technological realm, or when the claimed invention passes the machine or

---

[17] <u>Triplay, Inc. v. WhatsApp, Inc.</u>, No. 13-1703-LPS, (D. Del. Apr. 28, 2015)
[18] <u>Mayo</u>, 132 S.Ct. at 1297.

Mount, Spelman & Fingerman, p.c.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

1   transformation test.

2           *a)*     *The '757 patent passes the inventive step test because it does not*

3           *preempt the concept of modularity.*

4       Claims that are directed at a particular abstract concept nonetheless pass muster under § 101

5   when they do not preempt all applications of concept.[19] There is no reasonable interpretation of the

6   claims of the '757 Patent that could conceivably preempt the entire field of modularity. Amazon fails

7   explain how the claims of the '757 patent would preempt the entire concept of modularity, or even

8   the concept of modularity as applied to a computer. [20]

9       Instead, it relies on its characterizations of specific structural limitations in the claims as a

10   "veneer" in the hopes that the Court will gloss over them when reading the claims and the disclosures

11   in the specification related to the means plus function limitations. Amazon merely recites the

12   elements of the claims and couples them to conclusory statements of genericness and invalidity.

13   Courts have readily rejected arguments that merely amounted to "a recitation of the elements of each

14   representative claim followed by a conclusory characterization of the claims as "unlimited," "so

15   abstract and sweeping as to cover any and all uses of them," and "recit[ing] nothing more than an

16   ineligible concept." [21] So too should this Court reject Amazon's nearly identical argument against the

17   claims of the '757 patent.

18           *b)*     *The '757 patent's claims overcome a problem specifically arising in a*

19           *technological realm.*

20       Similarly, claims have withstood the inventive step test where the claimed solution was

21   necessarily rooted in computer technology to overcome a problem specifically arising in a

22   technological realm.[22] In <u>DDR Holdings</u>, involved methods of serving web pages offering

23   commercial opportunities by an "outsource provider." The claimed invention provided for more than

24

---

25   [19] <u>Modern Telecom Systems LLC v. Juno Online Services, Inc.</u>, No. SA CV 14-0347-DOC (C.D. Cal. Mar. 17, 2015);

26   [20] See <u>Helios Software v. Spectorsoft</u>, No. 12-081-LPS (D. Del. Sep. 18, 2014) (denying § 101 motion in part because accused infringer failed to show that purported concepts were fundamental truths that would be preempted by claims.)

27

28   [21] <u>Modern Telecom.</u>, No. SA CV 14-0347-DOC, *13 (C.D. Cal. Mar. 17, 2015).
[22] <u>DDR Holdings</u>, 773 F.3d at 1259.

Mount, Spelman & Fingerman, p.c.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1  one unrelated web stores to offer a single product while allowing an "outsource provider" to provide

2  a standard web page format for the product.  In particular, the invention allowed product

3  merchandisers to control the "look and feel" of their products even when offered for sale on unrelated

4  merchant sites. The Federal Circuit acknowledged that the claims addressed the business challenge of

5  retaining website visitors — but also recognized that this business challenge was specific to the

6  Internet, as opposed to "the performance of a business practice known prior to the 'pre-Internet world'

7  along with the requirement to perform it on the Internet." Notably, the Federal Circuit held that the

8  claims passed muster because "claimed solution is necessarily rooted in computer technology in order

9  to overcome a problem specifically arising in the realm of computer networks."

10  Here, the claimed invention in the '757 patent is not based upon a pre-existing concept.

11  Rather, the '757 patent aims to bridge components such as mobile devices and large displays such as

12  televisions or projectors, and a remote network such as the Internet. For example, the specification

13  discloses the signal path taken by a signal of the invention as it passes through each element.[23] This

14  solution is necessarily grounded in a technological context and is neither an assembly of black boxes,

15  nor a generic implementation of a prior concept.[24]

16     *c)*    *The '757 patent's claims pass the machine or transformation test.*

17  The claimed invention satisfies the machine or transformation test, such that the computer is

18  integral to the claimed invention integral to the claimed invention, facilitating the process in a way

19  that a person making calculations or computations could not.[25] A machine will only "impose a

20  meaningful limit on the scope of a claim [when it plays] a significant part in permitting the claimed

21  method to be performed, rather than function solely as an obvious mechanism for permitting a

22

23   [23] Col. 2 lines 15-20: "The mobile telephone is capable of effecting a link with a remote

24  telecommunication network 6 (for example Internet) by performing a wireless data transmission with
   a fixed antenna 5 connected to the remote network 6, using its standard communication interface, for

25  example GSM, GPRS, UMTS, or the like."
   Col. 4 lines 38-42: "The signals then pass through the following path defined by the following point:

26  [r]emote network 6, fixed infrastructure 5, mobile telephone 3 (through its GSM or GPRS or UMTS

27  wireless interface or the like)…"
   [24] As discussed below, the patent claims recite definite and sufficient structure and cannot be

28  characterized as generic black boxes unbounded by functionality.
   [25] SiRF Tech., Inc. v. Int'l Trade Comm'n, 601 F.3d 1319 (Fed. Cir. 2010)

1    solution to be achieved more quickly.[26]

2        In SiRF, the patents generally related to calculations performed on GPS receivers to

3    determine a receiver's location from GPS satellites and Assisted-GPS broadcasts. The Federal Circuit,

4    applying the machine or transformation test in Bilski v. Kappos, held that because the GPS was

5    essential to each step of the patented invention, it satisfied the machine or transformation test.[27]

6        Here, the claims of the '757 patent, and the central unit, first, second, and third elements are

7    not mechanisms for achieving a solution more quickly. Without any one of them, the patented

8    invention would not function. For example, in Claim 1, without the first unit, there would be no

9    central unit. Without the second unit, there would be no way to bridge the first unit, connected to the

10   third element, to the remote network. This necessity is even more apparent in Claim 16, which

11   focuses on the pocket-sized embodiment.

### C.    The '757 patent is not indefinite under 35 USC § 112 ¶ 2 for failing to disclose sufficient structure

     Amazon argues that the '757 patent is invalid for "pure functional claiming."  Amazon would

     have this Court believe that the Federal Circuit stepped in Congress' shoes and wrote 35 U.S.C. § 112

     ¶ 6 out of the books. Section 112, ¶ 6 states:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

     Prior Federal Circuit authority regarding means-plus-function claiming treated terms that

     contained the word "means" differently than claim terms that did not use the word "means." In the

     latter instance, the Federal Circuit applied a strong presumption that claim terms not using the word

     "means" were not means-plus-function terms, unless it was shown that "essentially is devoid of

     anything that can be construed as structure."[28] Williamson v. Citrix, the Federal Circuit overturned

     the strong presumption and held all claim terms, "means" or not, to the same standard: "whether the

---

[26] Id. at 1333.
[27] Id. at 1332.
[28] Williamson v. Citrix, __ F.3d __, No. 2013-1130 (Fed. Cir. June 16, 2015)

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1   words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite

2   meaning as the name for structure."[29] If yes, then the term does not invoke § 112 ¶ 6; if not, then the

3   term is construed as a means-plus-function term.

4          1.    <u>Amazon must prove invalidity under § 112 by clear and convincing evidence</u>

5         Invalidity under § 112 ¶ 6 & § 112 ¶ 2 must be proven by clear and convincing evidence.[30]

6   Here, Amazon bears the burden of proving by clear and convincing <u>evidence</u> (i.e., not attorney

7   argument) that the '757 patent's specification fails to disclose sufficient structure corresponding to

8   the claimed functions.

9          2.    <u>Claim construction is necessary in order to resolve this issue</u>

10        Amazon urges this Court to ask three questions about the '757 Patent: "First, does it contain a

11  means-plus-function limitation? Second, is the function performed by computer software? And, third,

12  does the specification contain a description of *any* algorithm performing the software function?"[31]

13  This inquiry merely describes the process of claim construction, for which this District has well-

14  established procedures. Moreover, the language of the statute authorizing means-plus-function

15  claiming *requires* that the Court undertake claim construction: "… such a claim shall be **<u>construed</u>** to

16  cover…"

17        The overall means-plus-function analysis is a two-step process. The first part of the inquiry

18  determines whether the claim limitation is drafted in means-plus-function format. As part of this step,

19  courts must construe the claim limitation to decide if it connotes "sufficiently definite structure" to a

20  person of ordinary skill in the art, which requires us to consider the specification (among other

21  evidence). In the second step, if the limitation is in means-plus-function format, then the court must

22  specifically review the specification for "corresponding structure."

23        <u>Intergraph v. Toshiba</u>, cited by Amazon, highlights the need for the parties and the Court to

24  undertake the formal claim construction process prior to construing the MPF elements in the claims

25  of the '757 Patent.[32] There, as Amazon highlights, the parties disputed whether several terms under

---

[29] <u>Id.</u>
[30] <u>Elcommerce. com, Inc. v. SAP AG</u>, 745 F. 3d 490, 493 (Fed. Cir. 2014)
[31] Mot. at 18:22-24.
[32] <u>Intergraph Hardware Technologies v. Toshiba Corp</u>, 508 F. Supp.2d 752 (N.D. Cal. 2007)

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

112 § 6. The <u>Intergraph</u> court acknowledged that "whether [wherein clauses] create limitations is <u>fact dependent</u>." In construing other MPF terms, the <u>Intergraph</u> court relied heavily upon expert testimony from both parties to determine *inter alia* whether certain "means" elements recited sufficient structure to overcome the 112 ¶ 6 presumption, or whether the specification disclosed sufficient structure.  It does <u>not</u> support the proposition that means-plus-function-based invalidity arguments may be settled prior to claim construction.

Similarly, in <u>Lighting Ballast v. Philips Electronics</u>, No. 2012–1014 (Fed. Cir. June 23, 2015), the Federal Circuit held "voltage source means" to convey sufficient structure to a POSITA such that the district court did not err when it found that the term was "understood by persons of skill in the lighting ballast design art to connote a class of structures." The district court made this finding over the objections of the accused infringer, who like Amazon, contended that the specification failed to disclose the structure corresponding to the claimed function of the "voltage source means."

### 3. Amazon fails to carry its burden of proof

Amazon asserts that "interface for communications with the remote network" should be construed as a MPF term under § 112 ¶ 6, but fails to show how a person of ordinary skill in the art would *not* understand that limitation to connote definite structure. Instead, it makes the naked assertion that the interface is part of a computer that must necessarily be a black box, because the interface performs the function of communicating with the remote network. But the function of the term is not relevant to the inquiry of whether a POSITA would understand the term to provide sufficient structure, and Amazon did not submit any evidence regarding the POSITA's understanding in the context of the '757 Patent, nor did it even define the level of skill in what art the hypothetical POSITA would possess.[33]

In <u>Elcommerce v. SAP</u>, the Federal Circuit found that a trial court erred in invalidating asserted claims under § 112 ¶ 2 without considering any evidence regarding the understanding of a POSITA. There, SAP, the accused infringer argued that the MPF terms in the patent in suit  did not have ""structure or acts" in the specification, and argued that since such support is absent, SAP could

---

[33] Yet another reason why it would be prudent for the Court to construe the claims prior to making a ruling under § 112 ¶ 6.

Mount, Spelman & Fingerman, p.c.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

satisfy its burden on indefiniteness without expert testimony or other evidence of the existing knowledge in the field of the invention."[34] When the trial court pressed SAP about its failure to proffer evidence regarding the understanding of a POSITA, SAP merely argued,

> Well, your Honor, that's what I'm here to do is to try to convince you that all those things … it's not structure. He's simply pointing to phrases in the patent that repeat the function and simply repeating the function and drawing a box around it doesn't convert it into structure.

The Federal Circuit found that SAP did not present evidence regarding the knowledge of persons of skill in the field of the invention, and that this viewpoint was "withheld from the district court" when SAP led the district court "into error."

> The burden was on SAP to prove by clear and convincing evidence that a person of ordinary skill in the field of the invention would be unable to recognize supporting structure and acts in the written description and associate it with the corresponding function in the claim. See TecSec, Inc. v. Int'l Bus. Machs. Corp., 731 F.3d 1336, 1349 (Fed.Cir.2013) ("The party alleging that the specification fails to disclose sufficient corresponding structure must make that showing by clear and convincing evidence."). While "the person of ordinary skill in the art" is a legal construct, like "the reasonable man," and claim construction is ultimately a matter for the judges, it cannot be assumed that judges are persons of ordinary skill in all technological arts.

The arguments advanced by Amazon here are exactly those the Federal Circuit firmly rejected when it characterized SAP's arguments as leading the district court "into error" and "withholding" the perspective of a POSITA from the court. SAP, like Amazon here, relied solely upon attorney argument and like Amazon, asserted that no evidence would be necessary because it asserted no structure was present. Similarly, Amazon merely recites the language from the '757 Patent, draws a black box around the invention, and argues that the invention claimed is a black box. As the Federal Circuit emphasized, "the burden was on SAP to prove its case, and in the absence of evidence provided by technical experts who meet the Daubert criteria there is a failure of proof. Attorney argument is not evidence."[35]

---

[34] Elcommerce, 745 F.3d at 501-502.
[35] Id. at 506.

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

Mount, Spelman & Fingerman, p.c.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

4.   <u>The '757 patent adequately discloses structures corresponding to the functions</u>

However, even assuming for the sake of argument that "interface for communications with the remote network" invokes 112 ¶ 6, the specification provides sufficient disclosure of the structures necessary to perform the functions identified in each means plus function term in the claims. Even if the disclosure of an algorithm is required here, the law is clear that the algorithm may be disclosed in "any understandable terms including as a mathematical formula, in prose, in a flow chart, or "in any other manner that provides sufficient structure."[36] In that event, the sufficiency of the algorithm is determined in view of what one of ordinary skill in the art would understand as sufficient to define the structure.[37] Similarly, "section 112 does not require the drafter "to encumber the specification" with information known to a person of skill in the field of the invention; nor does section 112 require that the specification reproduce information routinely possessed by persons in the field of the invention."[38]

"[The] patent need not include information and knowledge possessed by persons of ordinary skill in the field of the invention."[39] "When the structure or acts that perform the function "would be `well within the skill of persons of ordinary skill in the art,' such functional-type block diagrams may be acceptable and, in fact, preferable if they serve in conjunction with the rest of the specification to enable a person skilled in the art to make such a selection and practice the claimed invention with only a reasonable degree of routine experimentation."[40]

As detailed below, the specification provides ample support for the terms that might conceivably be construed as means plus function terms.

| Claim limitation | Disclosure in specification |
|---|---|
| "display and/or sound reproduction means" | Col. 1, lines 55-58: "The microcomputer according to the invention can for example use the screen of a television as display |

[36] <u>Intel Corp. v. VIA Techs., Inc.</u>, 319 F.3d 1357, 1366 (Fed. Cir. 2003); <u>In re Dossel</u>, 115 F.3d 942, 946-47 (Fed. Cir.1997); <u>Typhoon Touch Inc. v. Dell Inc.</u>, 659 F.3d 1376, 1385  (Fed. Cir. 2011).
[37] <u>Noah Systems Inc. v. Intuit Inc.</u>, 675 F.3d 1302, 1312  (Fed. Cir. 2012)
[38] <u>Elcommerce</u>, 745 F.3d at 503.
[39] <u>Id.</u>
[40] <u>Id.</u>

| | |
|---|---|
| | device, the acoustic cabinets associated with the television as sound reproduction element" Fig. 1 shows a television set 12 <br><br> Col. 2, lines 9-11: "The device represented in FIG. 1 consists of a first element 2 which comprises a central unit, a mobile telephone 3 and a conventional television set 12." <br><br> Col. 3, lines 55-60: "In another variant execution … only the sound part is processed. The first element 2 can then be connected to the sound reproduction element 4 (television, only the sound part of which is used), or to another sound reproduction system, such as a hi-fi deck, radio, which substitutes for the element 4." |
| "means for storing and executing computer programs" | Col. 1, lines 7-9: "…A computer comprises several elements, in particular a central unit (microprocessor, hard disk, RAM memory, etc.)" <br><br> FIG. 2 shows the first element 2 (the central unit). <br><br> Col. 3, lines 19-20: The first element is described as having a "microprocessor-based electronic system 2.4" <br><br> Col. 4, lines 36-37: "microprocessor-based system 2.4" |
| "means for storing data" | Col. 1, lines 7-9: "…A computer comprises several elements, in particular a central unit (microprocessor, <u>hard disk</u>, RAM memory, etc.)" <br><br> FIG. 2 shows the first element 2 (the central unit). |

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

| | |
|---|---|
| | Col. 3, lines 19-20: The first element is described as having a "microprocessor-based electronic system 2.4" <br><br> Col. 4, lines 36-37: "microprocessor-based system 2.4" |
| "interface for communication with a remote network"[41] | Col. 2 lines 15-20: "The mobile telephone is capable of effecting a link with a remote telecommunication network 6 (for example Internet) by performing a wireless data transmission with a fixed antenna 5 connected to the remote network 6, using its standard communication interface, for example GSM, GPRS, UMTS, or the like." <br><br> Col. 4 lines 38-42: "The signals then pass through the following path defined by the following point: [r]emote network 6, fixed infrastructure 5, mobile telephone 3 (through its GSM or GPRS or UMTS wireless interface or the like)…" <br><br> Col. 5 lines 13-17: "The signals then pass through the following path defined by the following point: [r]emote network 6, fixed infrastructure 5, mobile telephone 3 (through its GSM or GPRS or UMTS wireless interface or the like)…" |
| "means of wireless transmission with the said first element" (from second element) | Col. 2 lines 12-14: "A wireless communication interface 1, for example of Bluetooth 802.11b type or the like, is connected or built into the mobile telephone 3." |

[41] This is a term that Amazon apparently asserts is governed by § 112 ¶ 6, and is treated as such here for the sake of argument.

| | Col. 2 lines 21-23: "The first element 2 can access data situated on the remote network 6 via the interface 1 of the mobile telephone 3." Col. 4 lines 4-12: "In a variant of use, the two wireless interfaces of the mobile telephone 3 can be substituted by two radio channels on the same wireless interface. In another variant of use, the two wireless interfaces of the mobile telephone 3 may be substituted by a wireless interface of radio type and an infrared interface. In another variant of use, the two wireless interfaces of the mobile telephone 3 may be substituted by two infrared interfaces." |
|---|---|
| "means of connection to said first element" | Col. 2, lines 28-31: "In the example illustrated in FIG.1, the first element 2 is fixed to a SCART socket 9 of the television 12.  The first element can thus dispatch audio and video signals to this same television 12." See also FIG. 1. See also FIG. 2, connectors 2.1 and 2.2 Col. 2, lines 63-65: "For example, in case of connection to a television, a female SCART connector 2.1 is fixed to the left part, and a male SCART connector 2.2 to the right part." Col. 3, lines 2-4: "Thus, as shown by FIG. 1, the first element 2 can be connected to the television by plugging the connector 2.2 into the SCART socket 9 of the television." Col. 3, lines 5-9: "Likewise, the optional cable arriving normally at the television 12 (for example, a cable 7 coming from a video |

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

| | |
|---|---|
| | recorder 8 or any other signal source), can be connected to the television 12 by way of the connector 2.1 fixed to the first element 2." |
| "means of connection to said third element" | Col. 2, lines 28-31: "In the example illustrated in FIG.1, the first element 2 is fixed to a SCART socket 9 of the television 12. The first element can thus dispatch audio and video signals to this same television 12."<br>See also FIG. 1.<br>See also FIG. 2, connectors 2.1 and 2.2<br>Col. 2, lines 63-65: "For example, in case of connection to a television, a female SCART connector 2.1 is fixed to the left part, and a male SCART connector 2.2 to the right part."<br>Col. 3, lines 2-4: "Thus, as shown by FIG. 1, the first element 2 can be connected to the television by plugging the connector 2.2 into the SCART socket 9 of the television."<br>Col. 3, lines 5-9: "Likewise, the optional cable arriving normally at the television 12 (for example, a cable 7 coming from a video recorder 8 or any other signal source), can be connected to the television 12 by way of the connector 2.1 fixed to the first element 2." |

Amazon argues that the patent fails to disclose any algorithm by which the elements communicate with each other and the remote network, respectively. However, the table makes it clear that the specification recites to standards well known in the art (such as 802.11b Bluetooth , or GSM), and also describes the signal path in clear terms in prose, as well as in the flowchart in Fig 2. All of these are sufficient disclosures to satisfy § 112 ¶ 2.

**IV.**   **Conclusion**

For the foregoing reasons, SmartData respectfully requests that the Court deny Amazon's

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1  motion to dismiss.

2

3  Date: August 11, 2015

3                                                    _____/s/ Jing Hong Cherng_____

4                                                    Mount, Spelman & Fingerman, P.C.
                                                     RiverPark Tower, Suite 1650
5                                                    333 West San Carlos Street
                                                     San Jose CA  95110-2740
6
                                                     Law Offices of Larisa Migachyov
7                                                    Post Office Box 2061
                                                     San Francisco, California 94126-2061
8                                                    Counsel for SMARTDATA S.A.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000