Michael J. Bettinger (State Bar No. 122196)
mbettinger@sidley.com
Philip W. Woo (State Bar No. 196459)
pwoo@sidley.com
Holly A. Hogan (State Bar No. 238714)
hhogan@sidley.com
Alexander D. Baxter (State Bar No. 281569)
abaxter@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, California 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

Attorneys for Defendant
*Amazon.com, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMARTDATA S.A.,<br><br>Plaintiff,<br><br>vs.<br><br>AMAZON.COM, INC.,<br><br>Defendant. | Case No. 3:15-cv-01282-SI<br><br>Assigned to: The Hon. Susan Illston<br><br>**AMAZON.COM, INC.'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES**<br><br>Date: November 20, 2015<br>Time: 9:00 a.m.<br>Place: Courtroom 10, 19th Floor |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. SMARTDATA SQUANDERED COURT RESOURCES ON AN INVALID PATENT ..... 2

III. THE COURT SHOULD AWARD ATTORNEYS' FEES AGAINST SMARTDATA ..... 3

A. Abusive Patent Cases – Like SmartData's Here – Strain the Court System ..... 3

B. All Branches of Government Recognize that the Court System Is Burdened By Abusive Patent Litigation ..... 5

1. Patent Reform in the Legislative and Executive Branches ..... 5

2. The District Court's Role as Gatekeeper ..... 5

C. The Court Should Exercise Its Role as Gatekeeper and Award Fees Against SmartData ..... 6

1. Had the Court Granted Amazon's Motion to Dismiss, This Case Would Justify a Fee Award Under 35 U.S.C. § 285 ..... 6

2. Independent of § 285, the Court Retains the Inherent Authority to Award Fees ..... 7

3. The Court Should Use Its Inherent Power to Levy Sanctions ..... 9

D. The Court Could Alternatively Sanction Counsel Under 28 U.S.C. § 1927 ..... 12

IV. AMAZON'S FEE REQUEST IS REASONABLE, AND SHOULD BE AWARDED ..... 12

V. CONCLUSION ..... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atlantic v. Twombly*,
127 S.Ct. 1955 (2007)....................6

*Chalumeau Power Systems LLC v. Alcatel-Lucent*,
No. 11–1175–RGA, 2014 WL 4675002 (D. Del. Sep. 12 2014)....................9, 10

*Chambers v. Nasco, Inc.*,
501 U.S. 32 (1991)....................6, 7

*Fidelity Land Trust Co., LLC v. Mort. Elec. Registration Sys., Inc.*,
No. 6:12-cv-1367-ORL-37TBS, 2012 WL 6720994 (M.D. Fla. Dec. 4, 2012)....................9, 10, 11

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001)....................7, 8

*Galanis v. Szulik*,
841 F. Supp. 2d 456 (D. Mass. 2011)....................8, 10

*In re Girardi*,
611 F.3d 1027 (9th Cir. 2010)....................12

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)....................14

*Highmark, Inc. v. Allcare Health Management*,
134 S.Ct. 1744 (Fed. Cir. 2014)....................6

*Holgate v. Baldwin*,
425 F.3d 671 (9th Cir. 2005)....................10

*Ingram v. Oroudijan*,
647 F.3d 925 (9th Cir. 2011)....................14

*Logic Devices, Inc. v. Apple Inc.*,
No. C 13-02943 WHA, 2014 WL 6844821 (N.D. Cal. Dec. 4, 2014)....................10

*Lumen View Tech., LLC v. Findthebest.com, Inc.*,
24 F. Supp. 3d 329, 336 (S.D.N.Y. 2014)....................10

*Mathis v. Spears*,
857 F.2d 749 (Fed. Cir. 1988)....................13

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
134 S.Ct. 1749 (2014)....................6, 7

*Parallel Iron LLC v. NetApp Inc.*,
70 F. Supp. 3d 585 (D. Del. 2014)....................8

*Parrott v. Corly*,
No. 05-74552, 2006 WL 2471943 (E.D. Mich. Aug. 26, 2006)....................12

*Preiss v. S&R Prod. Co.*,
No. 2:10-cv-01795-RLH-RJJ, 2011 WL 4402952 (D. Nev. 2011)....................12

*RFR Indus., Inc. v. Century Steps, Inc.*,
477 F.3d 1348 (Fed. Cir. 2007)....................12

*SmartData, S.A. v, Apple, Inc.*
(N.D. Cal. Case No. 4:12-cv-00583)....................2

*SmartData S.A. v. Netgear, Inc.*
(N.D. Cal. Case No. 4:14-cv-01808)....................2

*SmartData, S.A. v. Roku, Inc.*
(N.D. Cal. Case No. 3:12-cv-01838)....................2

*Stone v. Greenberg Traurig, LLP*,
No. CV 09-2454-PHX-MHM, 2011 WL 995930 (D. Az. Mar. 21, 2011)....................9, 11

*Summit Data Sys., LLC v. EMC Corp.*,
No. CV 10-749-GMS, 2014 WL 4955689 (D. Del. Sep. 25, 2014)....................11

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
No. SACV 12-00329, 2015 WL 5470164 (C.D. Cal. Sep. 4, 2015)....................14

*Williams v. Family Dollar Servs., Inc.*,
327 F. Supp. 2d 582 (E.D. Va. 2004)....................12

**Statutes**

28 U.S.C. § 1927....................1, 2, 7, 12

35 U.S.C. § 285.................... *passim*

35 U.S.C. § 299(b)....................5

**Rules**

Federal Rules of Civil Procedure
11....................8
41(a)(1)....................8, 9, 11, 12
41(a)(1)(i)....................8, 12
41(a)(2)....................8

**Other Authorities**

Edward Wyatt, *Obama Orders Regulators to Root Out Patent Trolls*, NEW YORK TIMES (June 4, 2013) ....................5

Exec. Office of the President, *Patent Assertion and U.S. Innovation* (June 2013)…………….…..4,5

Randall R. Radar et al., *Make Patent Trolls Pay in Court*, NEW YORK TIMES (Jun. 5, 2014) ....................2

Robin Feldman, *The Pace of Change: Non-practicing Entities and the Shifting Legal Landscape*, 18 Chap. L. Rev. 635 (2014-2015) ....................4,5

Robin Feldman, *Slowing Patent Trolls*, NEW YORK TIMES (March 28, 2014) ....................4

Robin Feldman, Tom Ewing & Sara Jeruss, *The AIA 500 Expanded: The Effects of Patent Monetization Entities*, 17 UCLA J.L. & Tech. 7 (2013) ....................4

Sara Jeuss, Robin Feldman, & Joshua Walker, *The America Invents* Act *500: Effects of Patent Monetization Entities on US Litigation*, 11 Duke L. & Tech. Rev. 357 (2012-2013)…………..3,4

Steve Lohr, *With Patent Litigation Surging, Creators Turn to Washington for Help*, NEW YORK TIMES (April 29, 2015) ....................5

**NOTICE**

NOTICE TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE that on **November 20, 2015 at 9:00 a.m**., or as soon thereafter as the parties may be heard, in the courtroom of the Honorable Susan Illston located at Courtroom 10, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, defendant Amazon.com, Inc. will and hereby does move for an award of attorneys' fees pursuant to the Court's inherent authority (or alternatively, under 28 U.S.C. § 1927) as discussed in further detail below. The Motion is based upon this Notice, the Memorandum of Points and Authorities, the Declarations of Michael J. Bettinger and Holly Hogan, the pleadings in the record, all matters of which the Court may take judicial notice, and any other argument or evidence that may be presented in advance of or at any hearing of this Motion. This motion is made following a meet and confer among counsel which occurred on October 1, 2015.

**ISSUE TO BE DECIDED**

Should the court award attorneys' fees against SmartData for filing a frivolous lawsuit based on an invalid patent, declining invitations from Amazon to dismiss the case to avoid both expensive briefing and the substantial investment of time and attention by the Court, compelling Amazon to prepare and file—and then compelling the Court to study—a motion to dismiss, and then, only minutes before the hearing on Amazon's motion, dismissing the case in an effort to shield the merits from the disinfectant of judicial review, all with the hope of preserving this frivolous and abusive licensing campaign for a future date against other, perhaps less sophisticated or less resolute, members of the productive public who might well pay SmartData the tribute it demands solely to avoid larger, and often crushing, litigation costs?

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This case is an extreme example of the sort of patent litigation abuse that has justly earned the universal opprobrium of the Supreme Court, both chambers of Congress, the White House, the Federal Trade Commission, the Department of Justice, leading academics worldwide, and the pubic at large. It is a growing problem of national import, diverting billions annually from otherwise productive investments in the American economy—including and especially in American jobs—to

shadow companies and their private speculators. The problem continues to beg for a solution. And while earnest and thoughtful policymakers may disagree about how far proposed legislative reforms should reach, this Court has long enjoyed the power to remedy abuses suffered in an individual case. As no less ardent an advocate of strong patents than former Chief Federal Circuit Judge Randall Rader observed, "Lost in the debate [about patent litigation reform], however, is that judges already have the authority to curtail these practices: they can make trolls pay for abusive litigation." Randall R. Radar et al., *Make Patent Trolls Pay in Court*, NEW YORK TIMES (Jun. 5, 2014) (emphasis added).[1]

If this case does not warrant such a sanction, few ever could. Consequently, and for the reasons stated more fully below, Amazon respectfully asks the Court to invoke its inherent powers, or, alternatively, the powers conferred by Congress pursuant to 28 U.S.C. § 1927, to send a firm message to future patent speculators that our public institutions are not playgrounds for private bullies, that no matter how wide the courthouse door, and no matter how liberal our laws, our courts deserve our highest fidelity to principled advocacy. Nothing less is necessary to protect the dignity of, and safeguard access to, precious resources devoted to the public administration of justice and righting the real wrongs of deserving citizens.

## II. SMARTDATA SQUANDERED COURT RESOURCES ON AN INVALID PATENT

SmartData dragged out this case for a singular purpose: leverage for a payout on an invalid patent. SmartData is a patent assertion entity ("PAE") funded by venture capital. Bettinger Decl., ¶ 8; Ex. B; Dkt. 1, Complaint (referencing no current SmartData products, and stating that "SmartData does not do business in the Northern District of California"). True to the PAE formula, SmartData raised early settlement prospects with Amazon.[2] Hogan Decl., ¶ 2. But Amazon explained that the

---

[1] Available at http://www.nytimes.com/2013/06/05/opinion/make-patent-trolls-pay-in-court.html.

[2] Indeed, early settlement is SmartData's *modus operandi*. Its earlier cases all resolved before claim construction briefing, and two of those three cases resolved within six months of filing. *See SmartData, S.A. v. Roku, Inc*. (N.D. Cal. Case No. 3:12-cv-01838); *SmartData, S.A. v, Apple, Inc*. (N.D. Cal. Case No. 4:12-cv-00583); *SmartData S.A. v. Netgear, Inc*. (N.D. Cal. Case No. 4:14-cv-01808).

patent was invalid and provided Smart Data case law and briefing from other cases to support Amazon's position. Hogan Decl. ¶ 3. Amazon was also clear about attorney fees: Amazon would not seek its fees if SmartData dismissed before Amazon filed a motion, but certainly would if SmartData forced Amazon to expend resources on filing a motion only for Smart Data to dismiss the case. *Id*.

SmartData mocked Amazon's gesture. It did not dismiss in the month that followed. It did not dismiss after Amazon filed its motion. It did not dismiss after Amazon's reply brief. It did not dismiss in the three and a half weeks from the reply brief to the hearing. It did not dismiss a week before, a day before, the night before, or even an hour before the hearing. Instead, SmartData dismissed its case minutes before its patent faced the scrutiny of court review. Dkt. No. 32. The only reasonable conclusion is that SmartData finally accepted the inevitable: The end had come for its patent, and there was no hope of a quick payout from Amazon.

In the meantime, SmartData required the Court to spend its time and resources—up until moments before the hearing—analyzing the briefing, reviewing case law, and preparing for argument. SmartData also forced Amazon to outlay time, money and resources to prepare and file its motion. SmartData then further required Amazon to respond to SmartData's opposition brief, which never addressed the means-plus-function language at issue, cited vacated case law, took positions contrary to *Alice*, and never offered any inventive concept. *See, e.g.*, Dkt. No. 22, Amazon's Reply Brief on Motion to Dismiss ("Reply"), 2:8-11, 4:5-20, 12:2-26, 14:15-27. And SmartData obligated Amazon (and the Court) to prepare for a hearing that would never take place. SmartData monopolized considerable public and private resources to prolong its case on an invalid patent—all in hopes of upping its odds for a quick settlement.

## III. THE COURT SHOULD AWARD ATTORNEYS' FEES AGAINST SMARTDATA

### A. Abusive Patent Cases – Like SmartData's Here – Strain the Court System

PAEs (like SmartData) abuse court resources with their rampant patent profiteering. Lawsuits filed by patent monetizers swelled from 22% of patent cases to almost 40% over a five year period from 2007 to 2011. Sara Jeuss, Robin Feldman, & Joshua Walker, *The America Invents*

Act *500: Effects of Patent Monetization Entities on US Litigation*, 11 Duke L. & Tech. Rev. 357, 361, 388 (2012-2013). And in 2012, PAE litigation reached a crescendo. PAEs filed the majority of patent lawsuits that year. Robin Feldman, *The Pace of Change: Non-practicing Entities and the Shifting Legal Landscape*, 18 Chap. L. Rev. 635, 636-637 (2014-2015) ("*Pace of Change*"); Robin Feldman, Tom Ewing & Sara Jeruss, *The AIA 500 Expanded: The Effects of Patent Monetization Entities*, 17 UCLA J.L. & Tech. 7 (2013). PAEs know the odds: The exorbitant cost of patent litigation may lead "a rational product company" to capitulate to an PAE's toll "regardless of the merit of any underlying patent claims." *Pace of Change*, *supra* at 636-637. Thus, the PAE blueprint is lucrative, and "so much so that majority of patent lawsuits are now filed by parties using this strategy." Robin Feldman, *Slowing Patent Trolls*, NEW YORK TIMES (March 28, 2014).[3]

While this maneuver is "extraordinarily lucrative" for PAEs, it is also a "singularly destructive practice." *Id.* PAE patent speculation does nothing to benefit or advance technology, the health of our economy, or the public. Innovators defending against PAE lawsuits always lose, regardless of how the litigation unfolds. They lose because they must spend, and significantly so, to repel PAE demands. Operating companies outlayed more than $12 billion in 2014—yes, $12 billion— in legal fees, settlements, and judgments to resolve PAE disputes. *See* RPX 2014 PAE Cost Report at 4.[4] To paraphrase a venture capitalist, when "companies are spending time and money responding to patent demands, they are not inventing and they are not hiring." *Pace of Change*, *supra* at 642. The public also loses—foregone innovation, foregone products and foregone jobs. PAE practices "significantly retard innovation in the United States and result in economic 'dead weight loss' in the form of reduced innovation, income, and jobs for the American economy." Exec. Office of the President, *Patent Assertion and U.S. Innovation* (June 2013), at 12.[5] And of course, PAEs put a lien on public resources. PAEs added 3,600 lawsuits against 2,000 unique companies to court dockets last year. RPX 2014 PAE Report, *supra* at 4.

---

[3] Available at http://www.nytimes.com/2014/03/29/opinion/slowing-the-patent-trolls.html.

[4] Available at http://www.rpxcorp.com/wp-content/uploads/sites/2/2015/05/RPX-2014-PAE-Cost-Report-ZZFinal.pdf.

[5] Available at https://www.whitehouse.gov/sites/default/files/docs/patent_report.pdf.

**B. All Branches of Government Recognize that the Court System Is Burdened By Abusive Patent Litigation**

Every branch of government recognizes that abusive PAE litigation is an anathema to the healthy functioning of our patent system, our Court system, and ultimately, our economy.

**1. Patent Reform in the Legislative and Executive Branches**

Just a few years after the America Invents Act ("AIA") attempted to quell abusive patent litigation, Congress and the Executive Branch have turned an eye, again, to patent malfeasance.[6] AIA was not enough. PAE litigation remained at levels "still far above where we were in 2007." Robin Feldman, *Pace of Change, supra at* 637. Put another way, "the train still appears to be barreling down the tracks." *Id*. Patent litigation reform is thus, again, in the legislative hopper. Steve Lohr, *With Patent Litigation Surging, Creators Turn to Washington for Help*, NEW YORK TIMES (April 29, 2015).[7] On the other end of Pennsylvania Avenue, the Executive Branch has redoubled calls for patent litigation reform. Exec. Office of the President, *supra* at 3. The President has also ordered the Patent Office to tighten scrutiny of overly broad patent claims. Edward Wyatt, *Obama Orders Regulators to Root Out Patent Trolls*, NEW YORK TIMES (June 4, 2013).[8]

**2. The District Court's Role as Gatekeeper**

The Judiciary—the branch burdened by abusive patent litigation—has weeded out scores of meritless patent cases crowding their dockets. Indeed, an unbroken chain of Supreme Court and Federal Circuit precedent makes clear that District Courts are empowered to act as gatekeepers—both by disposing of untenable cases, and by awarding fees for abuse of the judicial process. *Twombly* reinforced district courts' authority to dismiss implausible cases "lest a plaintiff with 'a largely groundless claim' be allowed to 'take up the time of a number of other people, with the right

[6] *See* 35 U.S.C. § 299(b) ("[A]ccused infringers may not be joined…based solely on allegations that they each have infringed the patent or patents in suit."); Exec. Office of the President, *supra*, at 3. ("Several provisions of AIA may help address some of the problematic behavior of PAEs by creating new programs at the Patent and Trademark Office to create alternatives to litigation regarding patent validity…").

[7] Available at http://www.nytimes.com/2015/04/30/technology/with-patent-litigation-surging-creators-turn-to-washington-for-help.html.

[8] Available at http://www.nytimes.com/2013/06/05/business/president-moves-to-curb-patent-suits.html?_r=0.

to do so representing an *in terrorem* increment of the settlement value.'" *Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1966 (2007).

The district court's role as gatekeeper extends to its authority to award fees. In *Octane Fitness*, the Supreme Court held that 35 U.S.C. § 285 means what it says: district courts may award fees in "exceptional" cases, which stand out from the rest of patent cases, whether in the way they are litigated, or the strength of the litigant's factual and legal positions. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014). The Supreme Court also confirmed, in the companion *Highmark* case, that a § 285 fee award is "a case-by-case exercise" of a district court's discretion. *Highmark, Inc. v. Allcare Health Management*, 134 S.Ct. 1744, 1748-1749 (Fed. Cir. 2014). Of course, district courts also retain their inherent power to award fees. *Chambers v. Nasco, Inc*., 501 U.S. 32, 49 (1991). This inherent authority is grounded in the principle that Courts are vested, by their very existence, with the ability to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.*

### C. The Court Should Exercise Its Role as Gatekeeper and Award Fees Against SmartData

#### 1. Had the Court Granted Amazon's Motion to Dismiss, This Case Would Justify a Fee Award Under 35 U.S.C. § 285

This case was well on its way to an "exceptional" case finding under 35 U.S.C. § 285. SmartData asserted a plainly invalid patent. Amazon said so to SmartData and offered SmartData an exit. But SmartData refused to dismiss the case, opposed Amazon's motion to dismiss, and forced Amazon and the Court to prepare for oral argument—only to finally dismiss the case minutes before the hearing. Had there been *any* merit to SmartData's case, it would not have walked away at the very moment when it could explain the supposed merits to the Court in person.

While district courts typically police "exceptional" cases with fee awards under § 285 of the Patent Act,[9] that statute is unavailable here: SmartData's eleventh hour 41(a)(1)(i) dismissal without

[9] "An exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S.Ct. at 1756. Courts should consider the totality of the circumstances in deciding whether to award fees, and the preponderance of the evidence standard applies. *Id.* at 1756, 1759.

prejudice prevents Amazon from being the legally "prevailing party."[10] SmartData was in position to file such a dismissal only because the patent on which it brought suit on was *so exceptionally weak* that all agreed it would not survive a motion to dismiss, and Amazon never filed an answer. SmartData should not be permitted to game the system and avoid fees on an exceptionally meritless suit because it was *even more* meritless than other PAE suits and could not make it past the pleadings stage. And to that end, SmartData's attempt to avoid fees under § 285 overlooked the court's power to award fees through its inherent authority and 28 U.S.C. § 1927.

**2. Independent of § 285, the Court Retains the Inherent Authority to Award Fees**

SmartData's "hold up" litigation should not—and need not—go without penalty. The Supreme Court has recognized that, at times, bad faith conduct in litigation may require sanction, even though no appropriate vehicle is available under the statutes or the Rules. In those cases, a court may employ its inherent power to police itself and the litigants before it. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 46-47 (1991). The inherent power may be used to assess attorneys' fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975). Although this power must be wielded with restraint and discretion, *id.* at 44, it exists in part to "fill in the interstices" and allows the Court to levy sanctions when "neither the statute nor the Rules are up to the task." *Id.* at 47, 50. The Ninth Circuit requires a finding of bad faith before the Court may assess inherent powers sanctions. *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001). "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose. . . . [A]n attorney's reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to manipulate proceedings in one case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power." *Id.* at 994.

The inherent powers are particularly important where, as here, bad faith litigation behavior

[10] Indeed, had the Court granted Amazon's motion to dismiss, this motion for fees would be before the Court under § 285.

would have justified an award under § 285, but the defendant is not the "prevailing party" because of the patentee's attempt to game the system. Judge Andrews of the District of Delaware faced this situation last year in *Parallel Iron LLC v. NetApp Inc.*, 70 F. Supp. 3d 585 (D. Del. 2014). In *Parallel*, the plaintiff based its litigation on a scant pre-suit investigation, took untenable infringement positions, and attempted to fundamentally rework its accusations of infringement late in the case—all of which was exceptional. *Id.* at 591-94. But, because the suit ended with a voluntary dismissal (under Rule 41(a)(2)), NetApp was not the prevailing party; Section 285 sanctions were off the table. *Id.* at 590. To rectify Parallel's bad faith, vexatious, and wanton behavior, and to deter it in the future, Judge Andrews assessed attorneys' fees sanctions on Parallel under the court's inherent power.

Inherent powers sanctions are appropriate even if the plaintiff dismisses its case under Rule 41(a)(1)(i). For example, a court may levy sanctions for prolonging a case after being put on notice of its deficiencies, only to later attempt to avoid a judicial determination by filing a Rule 41(a)(1)(i) voluntary dismissal. *Galanis v. Szulik*, 841 F. Supp. 2d 456, 461-62 (D. Mass. 2011). In *Galanis*, the plaintiff filed a frivolous complaint for conspiracy and interference with business relations in order to extract a settlement and release of claims that the defendant might bring in another forum. *Id.*, at 459. The defendant warned plaintiff of the case's shortcomings and its intention to seek fees with a Rule 11 notice. *Id*. Defendant's counsel extended the Rule 11 notice period at plaintiff's request and promise to pay Defendant's fees. *Id.* at 461. Before the Rule 11 safe harbor period expired, plaintiff filed a Rule 41(a)(1) dismissal. *Id.* The plaintiff's bad faith nevertheless warranted sanctions under the Court's inherent powers because the complaint was not factually supported, plaintiff's counsel did not investigate the facts, and the purpose of the suit was to extract a settlement and release of other claims. In awarding fees, the Court highlighted that "defense counsel gave notice . . . that he would file a motion for sanctions if plaintiff proceeded. . . . Plaintiff and his counsel had the option, upon reflection, to forgo this unwarranted action but went forward nevertheless, forcing [defendant] to expend time and money defending against it." *Id.*; *see also Fidelity Land Trust Co., LLC v. Mort. Elec. Registration Sys., Inc.*, No. 6:12-cv-1367-ORL-37TBS, 2012 WL 6720994, at *5 (M.D. Fla. Dec. 4, 2012) (sanctioning plaintiff after it advanced frivolous

theories before filing a voluntary dismissal); *report and recommendation adopted by* 2012 WL 6720992 (M.D. Fla. Dec. 27, 2012) ("The courts . . . are not to be used as a cog in a litigant's business model."); *Stone v. Greenberg Traurig, LLP*, No. CV 09-2454-PHX-MHM, 2011 WL 995930 (D. Az. Mar. 21, 2011) (sanctioning plaintiff after 41(a)(1) dismissal filed after holding a hearing on motion to dismiss).

### 3. The Court Should Use Its Inherent Power to Levy Sanctions

The Court should invoke its inherent powers here. A catalog of improper and unreasonable litigation tactics justifies an award of attorneys' fees.

***First***, SmartData sought to leverage a plainly invalid patent. Amazon relies on its briefs in support of its motion dismiss, which are incorporated herein by reference. *See* Dkt. Nos. 20 & 22.

***Second***, SmartData persisted in this litigation until its settlement leverage evaporated because its patent was about to be invalidated. Pursuing a baseless case in hopes of achieving a settlement—hopes fueled by the high cost of defending patent litigation—have been found to justify a fee award. For example, in *Chalumeau Power Systems LLC v. Alcatel-Lucent*, No. 11–1175–RGA, 2014 WL 4675002 (D. Del. Sept. 12 2014), the court sanctioned the patentee for prolonging a meritless case in order to extort a settlement fee. In finding the case exceptional under § 285, the Court rejected the patentee's claim that it responsibly dismissed the case with prejudice when the economies of the case changed due to the defendant's licensing defense. *Id*., at 3.[11] The Court highlighted that the patentee knew from "day one" that the licensing defense existed, pursued baseless claim construction and infringement theories, and meagerly litigated the case. *Id*. From this conduct, the Court concluded that

> Chalumeau filed a frivolous lawsuit with ***the sole purpose of extorting a settlement fee. When it realized that was not going to happen, it dropped the case. Chalumeau's entire litigation strategy was devoted to stringing out the case in the hopes that Alcatel would incur fees while Chalumeau would not***…This allowed Chalumeau to keep its costs low while forcing Alcatel to spend considerable sums defending a frivolous lawsuit. Such behavior is exceptional.

*Id*. (emphasis added); *see also Galanis*, 841 F. Supp. 2d at 461-62 (awarding fees under the court's

[11] Section 285 sanctions were available because the case was dismissed *with* prejudice.

inherent authority in a voluntarily dismissed case); *Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329, 336 (S.D.N.Y. 2014) (finding plaintiff's motivation in seeking nuisance settlement to support exceptional case determination). SmartData's litigation strategy is a carbon copy of *Chalumeau*; it deserves the brand of bad faith, and an award of attorneys' fees.

***Third***, SmartData's strategy dragged out a dismissal that should have come shortly after Amazon's early warnings about the patent's invalidity. Amazon provided the courtesy of explaining its arguments supporting its motion to dismiss and sending relevant case law *a month* before Amazon filed the motion. Hogan Decl. ¶ 4. Amazon requested that SmartData dismiss the case, and committed not to seek fees if SmartData did so before Amazon filed its motion. *Id*: SmartData refused. SmartData opposed Amazon's motion, and in bad faith, with non-responsive arguments,[12] irrelevant evidence,[13] and vacated case law[14]—even though it never intended to prosecute the case to a decision on the motion.

Each of these arguments crosses the line separating frivolous cases from misguided ones. *See Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005) (frivolous filings are "*both* baseless and made without a reasonable and competent inquiry"). Taken together, they present an opposition that was not serious about rebutting the arguments Amazon made. This half-hearted pursuit of a meritless case after Amazon's early warnings about the patent's invalidity deserves a fee award. *See Logic Devices, Inc. v. Apple Inc.*, No. C 13-02943 WHA, 2014 WL 6844821 (N.D. Cal. Dec. 4, 2014) (awarding fees under § 285 where plaintiff's validity position on alleged double patenting was "unsupported by the record" and that the plaintiff litigated the case in an "unreasonable manner" for a number of reasons, including "ignor[ing] [the defendant's] repeated warnings about the invalidity of the only timely-asserted claim"); *Galanis*, 841 F. Supp. 2d at 461-62 (awarding fees under the court's inherent authority in a voluntarily dismissed case where counsel gave "early warnings" about

---

[12] *E.g.*, Dkt. No. 21, SmartData's Opposition to Motion to Dismiss ("Opp.") at 10-12 (failing to identify any inventive concept).

[13] *E.g.*, Opp. at 12, ll. 10-15 (relying on specification disclosure to make claims non-abstract); *id.* at 17-21 (failing to address lack of disclosed structure for challenged limitations).

[14] Opp. at 15-16 (quoting *Elcommerce.com, Inc. v. SAP AG*, 745 F.3d 490 (Fed. Cir. 2014), *vacated*, 564 F. App'x 599 (Fed. Cir. 2014)).

the complaint's lack of merit).

***Fourth***, SmartData's actions in holding onto the case until moments before the hearing was an abuse of court resources. SmartData encumbered court resources in order to extract a settlement payment from Amazon, relying on the high cost of defending a patent suit over the long haul to incentivize Amazon to settle quickly. When Amazon petitioned to invalidate the patent early, SmartData dismissed its case just *minutes* before the Court was set to hear the motion to dismiss. At long last, SmartData conceded the substantial merit of Amazon's motion; but SmartData had Amazon's theories and case law *weeks* before Amazon filed its motion, and the motion was fully submitted for *weeks more* before the hearing. SmartData determined to wait until the Court prepared itself for the motion hearing, Amazon prepared for argument, and the Court and parties had convened, before it actually filed its dismissal. SmartData's justification for the extreme delay was that it had issues with the Court's electronic filing system once it decided to dismiss. Bettinger Decl., Ex. E. Whether or not the ECF system was functional the morning of or night before the hearing, SmartData did nothing to notify the Court and Amazon that further preparation was unnecessary—no call to the Court deputy, no email to opposing counsel; nothing. And of course, SmartData's dismissal came to avoid the result it understood that judicial review would bring: invalidation of its patent.

By demanding that the Court expend the public's resources in preparing for and convening the hearing (and that Amazon expend its private resources in replying and preparing for hearing) SmartData needlessly ran up the bill. This misuse of the court system deserves a fee award. *See Summit Data Sys., LLC v. EMC Corp.*, No. CV 10-749-GMS, 2014 WL 4955689 (D. Del. Sep. 25, 2014) (case exceptional under § 285 because, *inter alia*, the patentee pursued a meritless action and then dismissed its claims prior to the court issuing a ruling on the merits); *Fidelity Land Trust Co.*, 2012 WL 6720994 at *5; *Stone*, 2011 WL 995930 at *4, 6.

***Finally***, this case warrants fees for the very reason that the Court cannot grant sanctions under § 285. SmartData contrived to prevent Amazon from becoming the "prevailing party" under § 285 by filing a notice of voluntary dismissal without prejudice under Rule 41(a)(1)(i). *See RFR Indus., Inc. v. Century Steps, Inc.*, 477 F.3d 1348, 1353 (Fed. Cir. 2007) (voluntary notice of

dismissal under Rule 41(a)(1)(i) closes a case without judicial intervention and therefore does not bestow prevailing party status on the defendant). As the Court observed, SmartData needed to "get out of Dodge." It filed the voluntary dismissal without prejudice hoping to avoid the fees motion it knew Amazon would bring. But the arm of the law reaches farther than the Dodge city limits. The Court's inherent power to levy sanctions exists to fill the gap in the Rules that SmartData sought to exploit.

**D. The Court Could Alternatively Sanction Counsel Under 28 U.S.C. § 1927**

In addition to its inherent power, the Court has the ability to sanction SmartData's counsel under 28 U.S.C. § 1927 for "unreasonably and vexatiously" multiplying the proceedings in this case.[15] In the Ninth Circuit, sanctions under § 1927 are available if (1) an attorney recklessly or knowingly makes frivolous arguments to the court; or (2) an attorney multiplies litigation in bad faith, for example by attempting to mislead the Court or by harassing the opposing side. *In re Girardi*, 611 F.3d 1027, 1060-66 (9th Cir. 2010) (report and recommendation of Special Master Tashima, C.J.). For example, courts have found opposing a motion to dismiss a frivolous complaint to be sufficient to award sanctions under § 1927. *Preiss v. S&R Prod. Co.*, No. 2:10-cv-01795-RLH-RJJ, 2011 WL 4402952 (D. Nev. 2011) (awarding sanctions for opposing motion to dismiss); *Williams v. Family Dollar Servs., Inc.*, 327 F. Supp. 2d 582 (E.D. Va. 2004) (awarding sanctions for refusing to immediately file a stipulation of dismissal when alerted of baseless nature of suit); *see also Parrott v. Corly*, No. 05-74552, 2006 WL 2471943 (E.D. Mich. Aug. 26, 2006) (sanctioning plaintiff for contesting a motion to dismiss and compel arbitration, then filing a Rule 41(a)(1) voluntary dismissal on the eve of the motion hearing).

**IV. AMAZON'S FEE REQUEST IS REASONABLE, AND SHOULD BE AWARDED**

To sanction SmartData for its waste of public and private resources, Amazon seeks a reasonable fee award of $93,122.00. Amazon requests only the fees it incurred after filing its motion to dismiss through the hearing. This is consistent with SmartData's obstinate conduct following that

[15] Sanctions under § 1927 are directed to counsel and not the party itself. Because SmartData is culpable in bringing this case in bad faith, the proper sanction is under the Court's inherent power.

filing (by opposing the motion and then dismissing the case at the eleventh hour), and Amazon's representation that it would not seek fees if SmartData dismissed at any point before Amazon filed its motion.

In total, Amazon's counsel billed 179 hours after the motion to dismiss was filed. Amazon's attorney fees in this case included legal research in preparation of the reply brief supporting the motion to dismiss, the preparation of that reply, preparation for the motion to dismiss hearing, and fees incurred by the usual progress of a patent case in the Northern District of California, such as preparing ADR documents, case management conference documents, and attending the case management conference. Bettinger Decl., Ex. A. All of these costs should have been avoided.

Amazon's attorney fees are reasonable because the amount of time billed and the billing rates of Amazon's counsel fall within the community standards of this Court. Amazon's counsel in this case included one associate, one of counsel, and two partners, with billing rates ranging from $590 to $945 per hour, and one paralegal with a billing rate of $270 per hour. Most of the work administering the case and preparing the reply brief was undertaken by the associate and of counsel, who billed at $590 and $698, respectively.[16] In addition, Amazon requests the Court award only 80% of the fees it actually paid ($93,122). Accordingly, the total blended rate for Amazon's counsel (discounted to 80% of the actual rate paid) is $518.83. Bettinger Decl., Ex. A.

The most recent American Intellectual Property Law Association Report of the Economic Survey[17] issued in June 2015 found that, for the first to third quartiles of surveyed individuals, of counsel with ten years experience billed between $338 and $534 per hour (nationwide).[18] Bettinger Decl., Ex. D, at I-45. As there was a larger sample pool of partners and associates in the survey, it

[16] The associate has four years of patent litigation experience; the of counsel, ten years of litigation experience, seven in patent litigation. Attorney profiles for each of the attorneys who billed time are attached as Ex. C to the Bettinger Declaration.

[17] The Court may consider survey evidence in determining the appropriate hourly rate. The AIPLA survey has been repeatedly used as a data point for understanding the prevailing rate in patent cases. *E.g.*, *Mathis v. Spears*, 857 F.2d 749, 755-56 (Fed. Cir. 1988). The Court may also rely on its own familiarity with the local legal market. *Ingram v. Oroudijan*, 647 F.3d 925, 928 (9th Cir. 2011).

[18] Only six of counsel were included in the sample, however, providing limited information about billing rates.

was able to break the billing rates of partners out by geographic region. For the first to third quartiles of surveyed individuals, partners in the San Francisco area billed between $493 and $863 per hour; associates in the San Francisco area billed between $420 and $575. *Id.* at I-25, I-36. Thus, while the actual billing rates of Amazon's counsel individually were higher than the nationwide third-quartile rate, the overall blended rate for the legal work performed (which includes partner oversight, and is here discounted by 20%) falls within the first and third quartiles of San Francisco associates. Furthermore, the billing rates of Sidley Austin attorneys have recently been found to be reasonable in a California patent litigation case. *See Universal Elecs., Inc. v. Universal Remote Control, Inc.*, No. SACV 12-00329, 2015 WL 5470164, at *4-5 (C.D. Cal. Sep. 4, 2015).

Finally, courts generally recognize that an attorney who achieves "excellent results" should be compensated fully for her time. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Amazon's counsel minimized the time necessary to fully defeat SmartData's patent, and induced SmartData to dismiss its claims entirely. Given SmartData's desire to force Amazon to expend resources before eventually settling, this result is undoubtedly "excellent." Amazon deserves to recover the expense of paying its attorneys to achieve this result.

## V. CONCLUSION

As former Federal Circuit Chief Judge Randall Radar observed, "Judges know the routine all too well, and the law gives them the authority to stop it. We urge them to do so." Radar et al., *Make Patent Trolls Pay in Court*. Accordingly, Amazon respectfully requests an award of attorneys' fees.

Dated: October 2, 2015

SIDLEY AUSTIN LLP

By: /s/ Michael J. Bettinger
Michael J. Bettinger
mbettinger@sidley.com
Attorneys for Defendant
*Amazon.com, Inc.*