Daniel S. Mount (Cal. Bar No. 77517)
Jing H. Cherng (Cal. Bar No. 265017)
Mount Spelman, P.C.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose CA  95110-2740
Phone: (408) 279-7000
Fax:     (408) 998-1473
Email: dmount@mount.com; gcherng@mount.com

Larisa Migachyov (Cal. Bar No. 264669)
Law Offices of Larisa Migachyov
Post Office Box 2061
San Francisco, California 94126-2061
Tel.: 650.218.5480
Email: larisa@lvmpatents.com

Counsel for SMARTDATA S.A.

U.S. District Court
Northern District of California

| | |
|---|---|
| SMARTDATA, S.A.<br><br>              Plaintiff<br><br>v.<br><br>AMAZON.COM, INC.<br><br>              Defendants | Case No.  3:15-cv-01282-SI<br><br>**Opposition to Motion for Sanctions** |

Mount Spelman, p.c.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

# Table of Contents

I.   INTRODUCTION .................................................................................................1

II.  STATEMENT OF RELEVANT FACTS ..............................................................1

    A.   SmartData, S.A. ...........................................................................................1

    B.   SmartData's Three Suits Against Other Infringers........................................2

    C.   SmartData's Suit Against Amazon ...............................................................3

III. LEGAL STANDARDS .........................................................................................4

    A.   The Court's Inherent Power..........................................................................4

    B.   28 U.S.C. § 1927 .........................................................................................5

IV. ARGUMENT .......................................................................................................5

    A.   Amazon Fails to Show the Bad Faith Necessary for the Court's Exercise of Its Inherent Power ...............................................................................................................5

        1.   Amazon seeks to influence the Court by smearing SmartData as a patent troll......5

        2.   SmartData's complaints for patent infringement were filed in good faith .............6

        3.   SmartData's conducted good faith negotiations with defendants.........................8

        4.   SmartData opposed Amazon's motion to dismiss in good faith on its merits........9

        5.   SmartData's voluntary dismissal, while poorly timed, does not support bad faith12

    B.   Amazon fails to establish an attorney's improper purpose that would justify § 1927 sanctions ...............................................................................................................13

    C.  Amazon did not adequately support its fees request...........................................15

V.  CONCLUSION....................................................................................................16

MOUNT SPELMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1

**<u>Table of Authorities</u>**

2

**Cases**

3    <u>Armacell, LLC v. Aeroflex USA, Inc.</u>, 2015 WL 3891435, slip copy (M.D.N.C. June 24, 2015)........7
     <u>B.K.B. v. Maui Police Dep't</u>, 276 F.3d 1091 (9th Cir.2002) ...........................................5

4    <u>British Telecomms. PLC v. Prodigy Communs. Corp.</u>, 189 F. Supp. 2d 101, 108-111 (S.D.N.Y.
     2002).............................................................................................................................11

5    <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 44 (1991)...........................................................4

6    <u>Chem v. New York Life Ins. Co.</u>, 1997 WL 792942 (N.D. Cal. Oct. 21, 1997)...................................15
     <u>Dutra v. BFI Waste Mgmt. Sys. of N. Am., Inc.</u>, 2015 WL 2251203 (N.D. Cal. May 13, 2015)..15, 16

7    <u>Elcommerce v. SAP</u>, 564 F. App'x 599 (Fed. Cir. 2014)....................................................12
     <u>Elcommerce v. SAP</u>, 745 F. 3d 490 (Fed. Cir. 2014)...........................................................12

8    <u>EON Corp. IP Holdings LLC v. Cisco Sys.</u>, 2014 WL 3726170 (N.D. Cal. July 25, 2014).................5
     <u>Eon–Net LP v. Flagstar Bancorp.</u>, 653 F.3d 1314 (Fed.Cir.2011) .........................................8

9    <u>Fink v. Gomez</u>, 239 F.3d 989 (9th Cir. 2001) ..................................................................5, 6

10   <u>Galanis v. Szulik</u>, 841 F. Supp. 456 (D. Mass. 2011) .......................................................14
     <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1397 (9th Cir.1992)...................................................17

11   <u>Gaymar Indus.v. Cincinnati Sub-Zero Prods.</u>, 790 F.3d 1369 (Fed. Cir. 2015).........................13
     <u>Gomez v. Vernon</u>, 255 F.3d 1118, 1134 (9th Cir.2001)........................................................5

12   <u>Helios Software v. Spectorsoft</u>, No. 12-081-LPS (D. Del. Sep. 18, 2014) ...............................9
     <u>Immersion Corp. v. Sony Computer Entm't Am., Inc.</u>, 2005 LEXIS 4777, (N.D. Cal. Jan. 10, 2005) .8

13   <u>In re Girardi</u>, 611 F.3d 1027 (9th Cir. 2010) ................................................................5

14   <u>In re Haynes</u>, 2013 WL 1195524, at *5 (N.D. Cal. Mar. 22, 2013) .....................................15, 16
     <u>In re Keegan Mgmt. Co.</u>, Sec. Litig., 78 F.3d 431, 436 (9th Cir. 1996)...................................16

15   <u>Kaass Law v. Wells Fargo Bank, N.A.</u>, 799 F.3d 1290 (9th Cir. 2015)....................................14
     <u>Levine v The Entrust Group Inc</u>, 2013 WL 3973780 (N. D. Cal. July 31, 2013) ............................16

16   <u>Lofton v. Verizon Wireless (VAW) LLC</u>, 308 F.R.D. 276, 285 (N.D. Cal. June 18, 2015)...............13
     <u>Marquez v. Harper School District No. 66</u>, Case No. 12-35621 (9th Cir. Nov. 25, 2013)

17   (unpublished) ...............................................................................................................18

18   <u>Octane Fitness, LLC v. ICON Health & Fitness, Inc.</u>, 134 S.Ct. 1749 (2014) ...........................4
     <u>Oracle Am., Inc. v. Terix Computer Co., Inc.</u>, 2015 WL 2398993 (N.D. Cal. May 19, 2015)............13

19   <u>Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.</u>, 2013 WL 684915 (N.D. Cal. Feb. 25,
     2013) ...........................................................................................................................15

20   <u>Primus Auto. Fin. Servs., Inc. v. Batarse</u>, 115 F.3d 644 (9th Cir. 1997).................................4, 16

21   <u>Rodriguez v. Serv. Employees Int'l</u>, 2011 WL 4831201 (N.D. Cal. Oct. 12, 2011)...........................5
     <u>Role Models Am., Inc. v. Brownlee</u>, 353 F.3d 962, 971 (D.C.Cir.2004).....................................17

22   <u>Site Update Solutions, LLC v. Accor North America, Inc.</u>, 2015 WL 581175 (N.D. Cal. Feb. 11,
     2015)..............................................................................................................................8, 9

23   <u>Technology Licensing Corp. v.Videotek, Inc.</u>, 545 F.3d 1316 (Fed. Cir. 2008)...........................12

24   <u>Telcordia Technologies, Inc. v. Cisco Systems, Inc.</u>, 612 F.3d 1365 (Fed. Cir. 2010).....................12
     <u>Thompson v. Harris</u>, 2014 WL 2930789, at *6 (N.D. Cal. June 27, 2014)....................................16

25   <u>Typhoon Touch Technologies, Inc. v. Dell, Inc.</u>, 659 F. 3d 1376, 1385 (Fed. Cir. 2011) ................12
     <u>US v. Barona</u>, 56 F. 3d 1087, n. 1 (9th Cir. 1995)............................................................13

26   <u>Welch v. Metropolitan Life Ins. Co.</u>, 480 F. 3d 942, 948 (9th Cir. 2007)..................................17

**California Statutes**

27   28 U.S.C. § 1927 .............................................................................................................4, 5, 13

**Rules**

28   MPEP 2173.01 ..............................................................................................................11

MOUNT SPELMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

MPEP 2173.5 ................................................................................................................................11

MOUNT SPELMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

I.     **INTRODUCTION**

Amazon seeks to paint a picture of a wholly unreasonable patent troll attempting to extort nuisance value settlements by engaging in bad faith litigation conduct.  Nothing can be further from the truth.  SmartData is a small research and development company which has contributed to advances in modular computing.  SmartData obtained rights to its intellectual property and is simply protecting those interests.  SmartData's conduct in the course of its pursuit of infringers in the United States has been at all times in good faith.  Amazon egregiously mischaracterizes SmartData's conduct in its failed attempt to meet the high threshold of demonstrating subjective bad faith on the part of SmartData or any individual attorney.  Accordingly, Amazon's motion should be denied.

II.     **STATEMENT OF RELEVANT FACTS**

   **A. SmartData, S.A.**

SmartData, S.A. ("SmartData"), formed on February 26, 1999, is a research and development company, developing reference designs and prototypes relating to computer hardware and software. [1] Reference designs as provided by SmartData are bundles of patented intellectual property, engineering documents and working prototypes. Id.  SmartData's reference designs help companies explore new market segments and speed-up their own research and development processes. Id. Companies can reduce their research and development costs and - at the same time - cut their time to market. Id.

SmartData's reference designs, which were all developed in-house, include ChipSlice, 2D_Slide, Backpad, Pocket Bee, and Zukero. Id. at ¶¶ 4 and 5.  Zukero, which incorporates inventions taught in the patent-in-suit, U.S. Pat. No. 7,158,757 (the '757 patent), combines the use of mobile phones with televisions. Id. at ¶ 4. Zukero uses a portable wireless television plug-in device to display full screen pictures on a TV screen by simultaneously using a mobile phone as a modem and as a remote control. Id.  SmartData has derived revenues to date of several hundred thousand

[1] Declaration of Jean-Pierre Buttet ("Buttet Decl."), ¶ 3,

MOUNT SPELMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

Case No. 3:15-cv-01282-SI                                                         Page 1
Opposition to Motion for Sanctions

Mount Spelman, p.c.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

dollars from the sale of software technology related to Zukero to companies such as Logitech Europe S.A. Id. at ¶ 7.  Also, over the last 4 years, SmartData has been discussing and evaluating potential partnerships – again related to Zukero - with companies such as Logitech Europe S.A., International Business Machines Corporation, Endemol International B.V., Nokia Corporation, and Orange S.A. (formerly France Telecom S.A.). Id. at ¶ 6.

Mr. Jean-Pierre Buttet is the President and Chief Executive Officer of SmartData, and the named inventor of the '757 patent. Id. at ¶ 1.  Mr. Buttet conceived and reduced to practice the inventions related to a modular computer taught in the '757 patent. Id. at ¶ 2.

**B.  SmartData's Three Suits Against Other Infringers**

Concerned that several users of modular computing technology might be infringing on SmartData's patent in the field, SmartData and its counsel investigated potential infringing products and concluded that Apple, Inc. ("Apple"), among others, was an infringer.[2]  SmartData conducted extensive correspondence with Apple in attempts to resolve this issue and license its patent to Apple well before litigation was considered. Id.  These negotiations were not fruitful and, as a result, SmartData brought suit against Apple. Id. at ¶ 3.

In that litigation, SmartData engaged in substantial dialog with Apple where Apple explained its opinions about how and why SmartData might not be able to establish liability, and about how and why damages might be limited because Apple's infringing behaviors would only have been implicated during certain uses of the accused Apple TV product.[3]  During the course of the dialogue, SmartData listened carefully to the arguments and suggestions by Apple. Id. at ¶ 4.  In none of their arguments, did Apple's counsel suggest that the patent was invalid for Alice-based arguments. Id.  SmartData and Apple settled their dispute. Id.

SmartData thereafter initiated its lawsuit against Roku, Inc. ("Roku"), which makes a similar

---

[2] Declaration of Larisa Migachyov ("Migachyov Decl."), ¶ 2.
[3] Declaration of Daniel S. Mount ("Mount Decl."), ¶ 3.

product in that it processes signals in a way similar to Apple TV. Id. at ¶ 5.  As with Apple, SmartData listened carefully to Roku's arguments.  Id. at ¶ 6.  Roku's counsel suggested that damages might be limited, as well as possible non-infringement arguments. Id.  Roku also suggested invalidity arguments but none were found persuasive and none suggested that the patent was invalid based on an Alice analysis. Id.  SmartData settled the case with Roku in a manner consistent with its realistic expectations and in a manner that was not inconsistent with the Apple royalty. Id. at ¶ 7.

SmartData next sued Netgear, Inc. ("Netgear") because SmartData believed that Netgear was selling a product similarly infringing as the accused Apple and Roku products. Id. at ¶ 8.  SmartData met with Netgear for nearly three hours early in the litigation to understand its position. Id. at ¶ 9. Netgear suggested various arguments about why SmartData's patent was not infringed, but never suggested an Alice defense. Id. at 9, 11.  At that meeting, Netgear's counsel were prepared to expressly identify certain processing that did not take place in the stage of the accused product's structure that would be necessary for infringement. Id. at ¶ 9.  SmartData's counsel advised that, if convinced by Netgear's non-infringement analysis, SmartData would not seek to obtain money from Netgear but would simply dismiss its case. Id.

Having been advised of the strength of Netgear's non-infringement defense, SmartData chose to dismiss its case without asking Netgear for anything in return. Id. at 10.

**C.  SmartData's Suit Against Amazon**

After studying the asserted patent, the accused product and the related infringement analysis, SmartData filed its fourth and last suit, which was against Amazon.com, Inc. ("Amazon"). Id. at 12. SmartData conducted an appropriate and careful infringement analysis, and an appropriate and careful study of the patent and its file history. Id. at 13.  As a result, at the time of the filing, SmartData believed its positions were sound.  Id. at 12.

As with all the other defendants, SmartData invited an early dialogue with Amazon to discuss

MOUNT SPELMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1   their opinions and to give Amazon an opportunity to share its views.  <u>Id</u>. at 14.   Amazon's counsel

2   indicated that they had a good <u>Alice</u> defense, citing two cases. <u>Id</u>.  After careful analysis of these

3   cited cases and a renewed study of the accused product, SmartData was not prepared to dismiss the

4   case. <u>Id</u>.   SmartData believed that it might successfully overcome a challenge based on <u>Alice</u>. <u>Id</u>.

5
6           After Amazon filed the motion to dismiss, SmartData's counsel carefully studied it, and

7   prepared and filed SmartData's opposition. <u>Id</u>. at 15.  However, SmartData's counsel believed the

8   motion was well written and did ultimately form the opinion that risk of dismissal was significant. <u>Id</u>.

9   Having been advised by counsel, SmartData made its decision and authorized dismissal of the lawsuit.

10  <u>Id</u>. at 16.  SmartData is in Europe and communications between it and counsel are sometimes slow.

11  <u>Id</u>.   Authorization for the dismissal came, unfortunately, very close to the time of the hearing on the

12  motion to dismiss. <u>Id</u>.  SmartData regrets the unfortunate timing of its notice.

13          Amazon then filed its present motion for sanctions in the form of attorneys' fees ("Mot.")

14  totaling over $93,000. Doc. No. 36.

15
16  **III.      LEGAL STANDARDS**

17      **A. The Court's Inherent Power**

18          Under its inherent powers, a court may impose sanctions where a party has willfully

19  disobeyed a court order, or where the party has "acted in bad faith, vexatiously, or for oppressive

20  reasons." <u>Octane Fitness, LLC v. ICON Health & Fitness, Inc.</u>, 134 S.Ct. 1749, 1758 (2014) (quoting

21  <u>Alyeska Pipeline Serv. Co. v. Wilderness Soc'y</u>, 421 U.S. 240, 258-59 (1978)).  These powers,

22  however, "must be exercised with restraint and discretion." <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32,

23  44 (1991).  Accordingly, the bad-faith requirement sets a "high threshold," <u>Primus Auto. Fin. Servs.,</u>

24  <u>Inc. v. Batarse</u>, 115 F.3d 644, 649 (9th Cir. 1997), which may be met by willful misconduct, or

25  recklessness that is coupled with an improper purpose. <u>Fink v. Gomez</u>, 239 F.3d 989, 993-94 (9th Cir.

26
27  2001).

28          The bar for sanctions under the Court's inherent authority – as well as under 28 U.S.C. § 1927

MOUNT SPELMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1    - is "considerably higher" than the bar for sanctions under the Patent Act. <u>EON Corp. IP Holdings</u>

2    <u>LLC v. Cisco Sys.</u>, 2014 WL 3726170, *6 (N.D. Cal. July 25, 2014).

3    **B.  28 U.S.C. § 1927**

4         28 U.S.C. § 1927 provides that an "attorney . . . who so multiplies the proceedings in any case

5    unreasonably and vexatiously may be required by the court to satisfy personally the excess costs,

6    expenses, and attorneys' fees reasonably incurred because of such conduct."  A court can award §

7    1927 sanctions only upon a finding of bad faith, which is present when an attorney acts with knowing

8

9    recklessness or argues a meritorious claim for the purpose of harassing the opposition. <u>B.K.B. v.</u>

10    <u>Maui Police Dep't</u>, 276 F.3d 1091, 1107 (9th Cir.2002); <u>Gomez v. Vernon</u>, 255 F.3d 1118, 1134 (9th

11    Cir.2001).  "The key term in [§1927] is 'vexatiously'; carelessly, negligently, or unreasonably

12    multiplying the proceedings is not enough." <u>In re Girardi</u>, 611 F.3d 1027, 1061 (9th Cir. 2010).  "The

13    term 'vexatious' has been defined as lacking justification and intended to harass." <u>Rodriguez v. Serv.</u>

14

15    <u>Employees Int'l</u>, 2011 WL 4831201, *4 (N.D. Cal. Oct. 12, 2011) (citations omitted).

16         "In sum, Barber holds that bad faith is required for inherent power sanctions. And Keegan

17    reiterates that [§ 1927] sanctions are permissible when an attorney has acted recklessly if there is

18    something more -such as an improper purpose." <u>Fink v. Gomez</u>, 239 F.3d 989, 994 (9th Cir. 2001).

19    **IV.    ARGUMENT**

20    **A. Amazon Fails to Show the Bad Faith Necessary for the Court's Exercise of Its Inherent**

21    **Power**

22        **1.    Amazon seeks to influence the Court by smearing SmartData as a patent troll**

23         Amazon assigns the pejorative "PAE" or patent assertion entity, more commonly known as

24    patent troll, to punish a small, European company for asserting the patent rights it holds in the United

25    States. Mot., pp. 2-3.  The fact that an inventive company with rights to intellectual property, such as

26    SmartData, asserts those rights does not make it a troll.  SmartData is not in the business of litigating

27    for profit.  SmartData is a small research and development company working in the field of computer

28

MOUNT SPELMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

hardware and software.  Since 1999, SmartData has been creating what it calls reference designs - bundles of patented IP, engineering documents and working protoytpes – to help companies reduce their research and development costs and time to market. Examples of these reference designs include ChipSlice, 2D_Slide, Backpad, Pocket Bee, and (pertinent here) Zukero.

Jean-Pierre Buttet, the President and Chief Executive Officer of SmartData, is the named inventor of the '757 patent. *Id.* at ¶ #.  The Zukero reference design is based in part on the '757 patent. Zukero combines the use of mobile phones with televisions, enabling display of full screen pictures on TV screens by simultaneously using a mobile phone as a modem and as a remote control. SmartData has earned several hundred thousand dollars from the sale of software technology related to Zukero to companies such as Logitech Europe S.A.  SmartData has also been engaged with several large, multinational companies, such as Logitech Europe S.A., International Business Machines Corporation, Endemol International B.V., Nokia Corporation, and Orange S.A. (formerly France Telecom S.A.), interested in the inventions taught by the '757 patent and embodied in the Zukero design reference.

The public policy articles re patent assertion entities that Amazon cites extensively have no bearing on SmartData because it is not such an entity.  In its 16 year history, SmartData has brought suit against a total of 4 patent infringers.[4]

2.      SmartData's complaints for patent infringement were filed in good faith

SmartData became concerned that companies in the field of modular computing might be infringing its patent.  The '757 patent and its file history were carefully studied, as well as potentially infringing products.  This study specifically included infringement analyses.  SmartData came to believe that Apple, Roku, Netgear and Amazon– each selling products with remote interfaces to

---

[4] In  addition to the instant case, see SmartData, S.A. v. Roku, Inc. (N.D. Cal. Case No. 3:12-cv-01838); SmartData, S.A. v, Apple,Inc. (N.D. Cal. Case No. 4:12-cv-00583); SmartData S.A. v. Netgear, Inc. (N.D. Cal. Case No. 4:14-cv-01808).

MOUNT SPELMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

MOUNT SPELMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

televisions - infringed its '757 patent for modular computing.  Based on that belief and understanding, SmartData made the well considered decision to bring claims against them.

Amazon repeatedly labels SmartData's complaint as baseless, meritless and frivolous. <u>Mot</u>., generally. Attorney argument and labels do not make it so.  Finding a patent infringement case objectively baseless requires an objective assessment of the merits of the challenged claims and defenses. <u>See</u> <u>Armacell, LLC v. Aeroflex USA, Inc.</u>, 2015 WL 3891435, slip copy, *4 (M.D.N.C. June 24, 2015) (citations omitted).  "Unless an argument or claim asserted in the course of litigation is 'so unreasonable that no reasonable litigant could believe it would succeed,' it cannot be deemed objectively baseless for purposes of awarding attorney fees under section 285." <u>Id</u>. (citations omitted). The Federal Circuit has held that it was impossible to determine whether a plaintiff's claim construction and infringement positions were without merit "[w]ithout a full claim construction analysis, including a consideration of [Plaintiff's] claim construction arguments." <u>Eon–Net LP v. Flagstar Bancorp</u>., 653 F.3d 1314, 1319 (Fed.Cir.2011) (citations omitted).  Here, SmartData conducted an appropriate and careful study of the patent and its file history, and an appropriate and careful infringement analysis.  As a result, SmartData reasonably believed its positions were sound at the time of filing.  A different, reasoned analysis of how claims should be construed does not make a complaint baseless.[5]

Amazon also argues that, after been 'given early warnings' of its <u>Alice</u>-based invalidity arguments, SmartData should have dismissed its case. <u>Mot</u>. at 10.  SmartData analyzed the cited cases but was not prepared to dismiss the case.  It reasonably believed a challenge based on <u>Alice</u> might be successfully overcome.[6]  It is not surprising SmartData disagreed with Amazon.  Litigants often disagree, but that cannot support a fee award. <u>See</u> <u>Immersion Corp. v. Sony Computer Entm't Am., Inc.</u>, 2005 LEXIS 4777, *35 (N.D. Cal. Jan. 10, 2005) (denying fees because, even though

---

[5] See the discussion, further below, of SmartData's opposition to Amazon's motion to dismiss.
[6] E.g., none of the other defendants suggested an <u>Alice</u> defense.

Sony's conduct was "aggressively unhelpful", it was not "entirely unreasonable" as it was based on

Sony's arguments).  Even taking an incorrect position on the law – which is not present here - would

not necessarily form a sufficient basis for fees.  See, e.g., Site Update Solutions, LLC v. Accor North

America, Inc., 2015 WL 581175, *7 (N.D. Cal. Feb. 11, 2015).

      3.    SmartData's conducted good faith negotiations with defendants

It is true that SmartData initiated dialog with the alleged infringers early in the litigation.[7]

Amazon's speculation that SmartData's motivation was to extract a "nuisance settlement" is a red

herring because nothing in the record supports it. Mot. at 9-10.  Amazon only points to SmartData's

suggestion of 'early settlement prospects'. Mot. at 2.  Even if the record reflected settlement amounts

or proposals lower than the amounts of a defense - which it does not – such settlement amounts or

proposals do not justify awarding fees.  Attempts to settle claims early in the litigation for costs lower

than the amounts of a defense are not sufficient, alone, to find subjective bad faith. See Site Update

Solutions LLC v. Accor North America Inc, 2015 WL 581175, *13 (N.D. Cal. Feb. 11, 2015).

Further, the facts do not support the assertion that SmartData offered quick settlement.  Its

dialog with each defendant was lengthy and substantive.  SmartData listened carefully to positions on

non-infringement, invalidity and damages.  E.g., Apple explained how infringement was only

implicated during certain uses of Apple TV, and Netgear articulated why its product's were

necessarily not infringing.  This meaningful dialog was beneficial to the parties.  Settlement

agreements were reached with Apple and Roku.  The result of negotiations with Netgear is indicative

of SmartData's good faith conduct.  Convinced by the non-infringement arguments, SmartData

dismissed the case against Netgear – without asking for money.  SmartData did not multiply the

proceedings and did not seek to extort a settlement.  SmartData, as promised, dismissed its case

against Netgear without asking for anything in return.

_____

[7] SmartData's failed negotiations with Apple began long before filing suit.

MOUNT SPELMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

4.      SmartData opposed Amazon's motion to dismiss in good faith on its merits

(a) *Amazon failed to meet its burden to prove the lack of an inventive step*

Amazon argues that SmartData's opposition to the motion was made in bad faith because it purportedly did not identify an inventive step. This argument misses the mark. First, regardless of whether the clear and convincing standard applies, it remained Amazon's burden to show the lack of an inventive step. See Opp., n.20, citing Helios Software v. Spectorsoft, No. 12-081-LPS (D. Del. Sep. 18, 2014) (denying § 101 motion in part because accused infringer failed to show that purported concepts were fundamental truths that would be preempted by claims.)

Second, SmartData correctly asserted that the Court need not reach the issue of whether the claims contain an inventive step because the invention claimed in the patent was not directed at an abstract concept.  As outlined in the opposition, "modularity" is not a patent-ineligible abstract concept.  More importantly, other courts have decided in favor of the patentee on this issue where the challenged claims did not preempt the abstract concept. See Opp., nn. 19, 20.

(b) *SmartData's opposition adequately addressed Amazon's means-plus-function arguments*

Amazon also argues that SmartData showed bad faith by purportedly failing to address Amazon's means plus function argument, namely, that the element "wherein the first element can communicate with the remote network through the second element" was a means-plus-function term that Amazon asserted had no adequate support in the specification. The opposition misidentifies this term as "interface to remote network," but this does not change the arguments. The claim language and opposition indicated, the "first element" was a structure comprised of:

1.   means for storing and executing computer programs,

2.   means for storing data,

3.   means of connection to the third element,

4.   means of receiving, respectively sending, signals sent, respectively received, by said

MOUNT SPELMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

second element.

Further, the second element is also described in the claim language as a structure comprising a data input device, the interface for connection with a remote network, and means of wireless transmission with the first element.  SmartData identified in its opposition all structural support in the specification for each of the terms identified above. See Opp. at 14-18.

Amazon's argument presumed that the disputed element in the patent was means plus function, without providing any evidence in support. While the limitation does contain functional language, that by itself does not automatically make a limitation means plus function. Indeed, the MPEP itself contemplates the use of non-MPF functional language in claims:

> Applicant may use functional language, alternative expressions, negative limitations, or any style of expression or format of claim which makes clear the boundaries of the subject matter for which protection is sought. As noted by the court in In re Swinehart, 439 F.2d 210, 160 USPQ 226 (CCPA 1971), a claim may not be rejected solely because of the type of language used to define the subject matter for which patent protection is sought.

MPEP 2173.01. See also MPEP 2173.5:

> Functional language may also be employed to limit the claims without using the means-plus-function format. See, e.g., K-2 Corp. v. Salomon S.A., 191 F.3d 1356, 1363 (Fed. Cir. 1999). Unlike means-plus-function claim language that applies only to purely functional limitations, Phillips v. AWH Corp, 415 F.3d 1303, 1311 (Fed. Cir. 2005) (en banc) ("Means-plus-function claiming applies only to purely functional limitations that do not provide the structure that performs the recited function."), functional claiming often involves the recitation of some structure followed by its function.

Thus, the issue is not whether the claim language was function.  Instead, both Amazon and SmartData cited to Williamson v. Citrix, in which the Federal Circuit held that a term is construed as means plus function only if a POSITA would have understood that the claim does not convey "sufficiently definite structure." However, as described above, "first element," and "second element"

MOUNT SPELMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

are both clearly described in the claim as structural elements. The recitation of the function of the structure does not automatically bring a limitation under the purview of 112 para. 6, and Amazon provided no evidence that a POSITA would not understand the term to carry sufficiently definite structure.  See Opp. at 11, 12. See also British Telecomms. PLC v. Prodigy Communs. Corp., 189 F. Supp. 2d 101, 108-111 (S.D.N.Y. 2002).

Contrary to Amazon's assertions, SmartData identified all structures in the specification that it contended disclosed the structures comprising the respective first and second elements. Amazon provided no evidence to support its burden by clear and convincing evidence that a POSITA would not understand the first and second elements, each comprising their own structures, would fail to describe sufficient structure.

*(c)  Elcommerce v. SAP, while vacated, is still at least persuasive authority, and SmartData's reliance upon the vacated opinion cannot support a finding of subjective bad faith.*

Amazon asserts that SmartData's citation to Elcommerce v. SAP, 745 F. 3d 490 (Fed. Cir. 2014), later vacated by the Federal Circuit, indicates subjective bad faith.  SmartData relied upon Elcommerce v. SAP for the proposition that a party challenging the validity of a patent on grounds based upon a POSITA's understanding must present evidence of this to the Court.   This is not a controversial concept.[8]  Furthermore, although the Federal Circuit later vacated the opinion, it did so at the behest of the parties as a result of a motion to dismiss. See Elcommerce v. SAP, 564 F. App'x 599 (Fed. Cir. 2014) ("The parties jointly move to dismiss this appeal… the motion is granted.").

The Federal Circuit did not overrule its reasoning in Elcommerce, and the reasons for vacating the opinion were not related to the reasoning in the opinion. Thus, Elcommerce is still

---

[8] Telcordia Technologies, Inc. v. Cisco Systems, Inc., 612 F.3d 1365, 1377 (Fed. Cir. 2010); Technology Licensing Corp. v.Videotek, Inc., 545 F.3d 1316, 1338–39 (Fed. Cir. 2008); Typhoon Touch Technologies, Inc. v. Dell, Inc., 659 F. 3d 1376 (Fed. Cir. 2011) ("'The defendants have directed us to no evidence that a programmer of ordinary skill in the field would not understand how to implement this function.").

MOUNT SPELMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

properly considered at least persuasive authority. US v. Barona, 56 F. 3d 1087, n. 1 (9th Cir. 1995) ("... the reasoning of a vacated opinion may be looked to as persuasive authority if its reasoning is unaffected by the decision to vacate").  SmartData's reliance upon persuasive authority certainly cannot support a finding of subjective bad faith.

### 5.   SmartData's voluntary dismissal, while poorly timed, does not support bad faith

Imposing sanctions under the Court's inherent power "requires a finding of bad faith or conduct tantamount to bad faith." Oracle Am., Inc. v. Terix Computer Co., Inc., 2015 WL 2398993, at *4 (N.D. Cal. May 19, 2015) (citations omitted).  "[T]he bad-faith requirement sets a high threshold." Lofton v. Verizon Wireless (VAW) LLC, 308 F.R.D. 276, 285 (N.D. Cal. June 18, 2015) (citations omitted).  Amazon has not met this high threshold by stressing that SmartData "did not dismiss a week before, a day before, the night before, or even an hour before the hearing." Mot. at 2. SmartData filed its notice in good faith.   SmartData was advised by counsel that the risk of dismissal was significant.  After careful deliberation, SmartData chose to voluntarily dismiss the case.  It's authorization to file the notice of voluntary dismissal regrettably came close in time to the Court's hearing.   Communications between SmartData in Europe and its counsel in California are sometimes slow.  But, the unfortunate timing of SmartData's notice does not rise to the level of bad faith. Gaymar Indus.v. Cincinnati Sub-Zero Prods., 790 F.3d 1369, 1377 (Fed. Cir. 2015) ("sloppiness on the part of litigants is unfortunately all too common, it does not amount to misrepresentation or misconduct").

The cases on which Amazon rely involve much more egregious conduct. E.g., see Parallel Iron LLC v. NetApp Inc., 70 F. Supp. 3d 585, 591-592 (D. Del. 2014) ("Parallel Iron strung the Defendant along for one year, one month, and eighteen days stating [in initial and multiple, amended infringement contention disclosures] that they were accusing products that implemented pNFS, only to state, when directly asked in an interrogatory, that they had no intention of accusing products

MOUNT SPELMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

implementing the pNFS standard"); <u>Galanis v. Szulik</u>, 841 F. Supp. 456, 459 (D. Mass. 2011)

(Plaintiff filed complaint after Rule 11 warnings, failed to provide promised evidentiary support and

instead asked for settlement payment, and reneged on a promise to dismiss and pay attorneys' fees);

<u>Chalumeau Power Sys. LLC v. Alcatel–Lucent</u>, 2014 WL 4675002, *3 (D. Del. Sept.12, 2014) (the

plaintiff's case was subject to a license defense, based on a license that the plaintiff knew of before

filing suit, and which the defendant could only learn of through discovery).

**B.  Amazon fails to establish an attorney's improper purpose that would justify § 1927 sanctions**

Amazon states that sanctions are warranted under 28 U.S.C. § 1927. <u>Mot</u>. 12.  Yet, Amazon

also indicates that the "proper sanction" is not a § 1927 sanction against an attorney but an inherent

power sanction against SmartData.  Further, Amazon provides no analysis supporting an award of §

1927 sanctions. <u>Id</u>.  It provides a paragraph of citations.  Amazon makes no allegations of improper

purpose against any individual attorney, and fails to provide any facts or analysis showing which

attorney - in its view - should be personally sanctioned. <u>See</u> <u>Kaass Law v. Wells Fargo Bank, N.A.</u>,

799 F.3d 1290, 1291 (9th Cir. 2015) (holding that § 1927 does not permit the imposition of sanctions

against a law firm).  As a result, the Court need not consider § 1927 as grounds for imposing

sanctions. <u>See Chem v. New York Life Ins. Co.</u>, 1997 WL 792942, at *3 (N.D. Cal. Oct. 21, 1997),

aff'd, 168 F.3d 498 (9th Cir. 1999) ("[A] court need not address an issue which is raised in a

summary manner which has not been adequately briefed."; citing <u>Retlaw Broadcasting Co. v.</u>

<u>N.L.R.B.</u>, 53 F.3d 1002, 1005 n. 1 (9th Cir.1995)).  However, in an abundance of caution, SmartData

addresses this issue.

First, this case ended far too early for the Court to impose §1927 sanctions. Even when

attorney conduct is so egregious as to warrant sanctions under §1927, a court should award only those

fees incurred after "the point at which it was absolutely clear that the case had no merit." <u>See</u> <u>In re</u>

<u>Haynes</u>, 2013 WL 1195524, *5 (N.D. Cal. Mar. 22, 2013).  But this case never reached that point, as

Mount Spelman, p.c.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

no discovery, including expert opinion on claim construction, had occurred. <u>See</u> <u>Dutra v. BFI Waste</u>

<u>Mgmt. Sys. of N. Am., Inc.</u>, 2015 WL 2251203, *5 (N.D. Cal. May 13, 2015) (denying §1927

sanctions because, although the action is meritless, there was no evidence of intention to harass;

quoting <u>Greenberg v. Sala</u>, 822 F.2d 882, 887 (9th Cir. 1987) (courts should be reluctant in imposing

sanctions, "especially errors in papers filed before an opportunity for discovery")); <u>Power</u>

<u>Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.</u>, 2013 WL 684915, at *3 (N.D. Cal. Feb. 25,

2013) ("in most instances, including this one, it is preferable that a motion for sanctions not be filed

prior to a <u>Markman</u> hearing and the resulting claim construction.").

An award under § 1927 requires a finding of "subjective bad faith," which is present when

counsel "knowingly or recklessly raise a frivolous argument, or argues a meritorious claim for the

purpose of harassing an opponent." <u>In re Keegan Mgmt. Co.</u>, Sec. Litig., 78 F.3d 431, 436 (9th Cir.

1996) (internal quotations omitted).  Courts should not impose sanctions where an "action is

meritless" unless it also finds "evidence of intention to harass." <u>Dutra</u>, 2015 WL 2251203 at *5.  The

burden to produce such evidence is on Amazon. <u>Levine v The Entrust Group Inc</u>, 2013 WL 3973780,

at *1 (N. D. Cal. July 31, 2013) ("While plaintiffs' claims were unconvincing, there is a difference

between unsuccessful arguments and sanctionable conduct under Section 1927. Defendant must

demonstrate either that plaintiffs' counsel knew their claims were frivolous or that they recklessly

raised frivolous arguments.").  Amazon provides no such evidence. Amazon has failed to

demonstrate that any counsel for  SmartData ever intended to harass it.

SmartData did not continue litigating beyond "the point at which it was absolutely clear that

the case had no merit." <u>In re Haynes</u>, 2013 WL 1195524 at *5. SmartData made the decision to

dismiss its claims based on advice of counsel.  That does not justify sanctions under §1927.  Indeed,

in <u>Primus Auto.</u>, the court found the record failed to show counsel's bad faith even though the

MOUNT SPELMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

counsel's arguments in opposition were "totally frivolous" and counsel's behavior appalling. <u>Primus Auto.</u>, 115 F.3d at 994 (citing <u>In re Mroz</u>, 65 F.3d 1567, 1576 (11th Cir.1995)).

Finally, SmartData's voluntary dismissal does not warrant §1927 sanctions because "[d]ismissing the action of [its] own volition" is a way for a party to avoid unnecessarily multiplying the proceedings. <u>Thompson v. Harris</u>, 2014 WL 2930789, at *6 (N.D. Cal. June 27, 2014). Acknowledging the regrettable timing of its notice, that is exactly what SmartData did here.

**C. Amazon did not adequately support its fees request**

Amazon relies upon Exhibit A to Mr. Bettinger's declaration to establish the time expended by Amazon's attorneys in this case. The exhibit contains nothing but block billed entries describing time expended by attorney per month, with multiple tasks subsumed within the time entries without any breakdown of the time spent on each task. This Court may exercise its discretion and disregard the exhibit in deciding this motion. Accordingly, the Court may deny the motion on the grounds that the fees request was not adequately supported.

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." <u>Welch v. Metropolitan Life Ins. Co.</u>, 480 F. 3d 942, 948 (9th Cir. 2007), citing <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1397 (9th Cir.1992). The district court has the authority to reduce hours that are billed in block format. In <u>Welch</u>, the Ninth Circuit affirmed a district court's finding that a fee applicant failed to carry its burden by relying upon blocked billed time, because "block billing makes it more difficult to determine how much time was spent on particular activities." <u>Welch</u>, 480 F.3d at 948, citing <u>Role Models Am., Inc. v. Brownlee</u>, 353 F.3d 962, 971 (D.C.Cir.2004) (reducing requested hours because counsel's practice of block billing "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness") (other citations omitted).

Here, Exhibit A to Mr. Bettinger's declaration is merely a summary of time spent per attorney per month. Each entry for each attorney contains a single time entry, corresponding to another cell describing a multitude of tasks. There is way to tell from the exhibit, "how much time was spent on particular activities." This is compounded by the fact that the entries are summarized by month,

MOUNT SPELMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1    making it impossible for the Court and SmartData to evaluate the reasonableness of the requested

2    fees.

3         In Welch, the Ninth Circuit held that the district court erred by reducing the requested time

4    across the board, when "barely more than half" of the hours submitted by the requesting party were

5    block billed. 480 F.3d at 947. However, that consideration is not present here, where all of time

6    Amazon submitted was block billed. In an unpublished opinion, the Ninth Circuit also held that it

7    was not an abuse of discretion for a district court to delete block-billed entries from the fees request.

8    See Marquez v. Harper School District No. 66, Case No. 12-35621 (9th Cir. Nov. 25, 2013)

9    (unpublished). While Marquez is not binding authority upon this Court, its reasoning may be applied

10   in equal force to Amazon's requested fees.

11   **V.    CONCLUSION**

12        Amazon makes much of the timing of SmartData's negotiations, legal merits of the complaint

13   and opposition, and the notice of dismissal.[9]  However, Amazon's speculation as to SmartData's

14   motives does not provide any evidence of bad faith.  For all the foregoing reasons, SmartData

15   respectfully asks the Court to deny Amazon's motion for sanctions.

16

17

18   Date: October 23, 2015

19                                    _____/s/ Jing Hong Cherng_____
                                     Mount Spelman P.C.
20                                    RiverPark Tower, Suite 1650
                                     333 West San Carlos Street
21                                    San Jose CA  95110-2740

22                                    Law Offices of Larisa Migachyov
                                     Post Office Box 2061
23                                    San Francisco, California 94126-2061
24                                    Counsel for SMARTDATA S.A.

25

26

27

28   _____
     [9] Mot. at 2-3.

Case No. 3:15-cv-01282-SI                                              Page 16
Opposition to Motion for Sanctions